STATE OF MISSOURI at the relation of EVAN L. CRANFILL, C. F. EDWARDS, HOMER MARTIN, MARY O. SEYBOLD, and EDWARD WHITE, Relators, v. BRYCE B. SMITH, ALFRED N. GOSSETT, CHARLES H. CLARK, JAMES B. SHOEMAKER, ELLIOTT H. JONES, FRANK C. BECK, FRANK M. EVISTON, BYRON SPENCER, and RUBY D. GARRETT.—48 S. W. (2d) 891.

Court en Banc, April 12, 1932.*

*NOTE: Opinion filed at October Term, 1931, March 26, 1932; motion for rehearing filed; motion overruled at April Term, April 12, 1932.

2 3

*H. S. Julian* for relators; *James M. Johnson* of counsel.

*George Kingsley* and *Marcy K. Brown, Jr.* for respondents.

HENWOOD, J.—This is an original mandamus proceeding, wherein relators, as a committee of petitioners for the adoption of an ordinance under the initiative provision of the charter of Kansas City, seek to compel respondents, as members of the council of Kansas City, to submit the ordinance to the electors of the city at a special election on April 12, 1932. The ordinance provides for the acquisition by Kansas City of the street railway system of the city now owned and operated by the Kansas City Public Service Company, a Missouri corporation, by condemning the capital stock of the company under the city's power of eminent domain.

The alternative writ has been issued, respondents have filed their return, and relators have filed a motion for judgment on the pleadings.

In their return to the alternative writ, respondents admit the authority of relators to act officially as a committee of petitioners for the adoption of the ordinance, and further admit that relators have met all requirements of the city's charter for the submission of the ordinance to the electors of the city, but respondents say that the ordinance, if adopted, would be unconstitutional and of no force or effect, for various reasons specified in the return, and that they should not be compelled, by a mandate of this court, to do a useless thing and to burden the taxpayers of the city with the expense of a useless special election.

Section 428 of Article XVII of the city's charter provides the course to be followed in submitting a proposed ordinance to the electors of the city, and that, upon compliance with such provisions, "the Council shall submit the proposed ordinance at a special election to be held on such date (the date designated by the petitioners)."

Relators contend that when, as in this instance, there has been a compliance with the provisions of the city's charter for the submission of a proposed ordinance to the electors of the city, the council has no discretion in the matter, and must, as a ministerial act, submit the ordinance to the electors of the city. And relators further contend that this court "will not go into the legal aspect of the ordinance until it becomes a law."

Respondents contend that this court, "in the exercise of its discretionary power in the premises, should determine whether or not the proposed ordinance would be valid if adopted, and grant or deny the writ accordingly." And respondents further contend that the city is without authority, under its charter or the general laws of this State, to acquire the property of the Kansas City Public Service Company by condemning the capital stock of the company, and that, for this and various other reasons, the proposed ordinance, if adopted, would be unconstitutional and of no force or effect.

I. In determining whether the writ should be granted or denied, we need not decide whether the provision in the city's charter for the submission of a proposed ordinance to the electors is mandatory or merely directory, nor are we controlled by the general rule that courts will not inquire into the validity of an act of legislation until after it has become *fait accompli* and is clothed with the outward forms of law. ■ Mandamus is not a writ of right. Its issuance lies in the sound judicial discretion of the court. Before granting the writ the court will look to the public interest which may be concerned, and act in view of all the existing facts and with due regard to the consequences. ■ And the writ will be refused where, if granted, it would be unavailing, or where the act to be performed would be unlawful, for the court will not compel the performance of a vain or unlawful act. [Ferris on Extraordinary Legal Remedies, secs. 196 and 204.] In the recent case of State ex rel. Asotsky v. Regan, 317 Mo. l. c. 1221, 298 S. W. l. c. 748, we said: "If the ordinance were in fact unconstitutional, or was void for any other reason, that would be a complete defense to this action. We would not impose upon Kansas City the burden and expense of submitting to a vote an ordinance which would be of no effect if adopted." ■ Confronted with a similar situation, the Supreme Court of Nevada said: "The proposition that a writ of mandate will not issue to compel respondents to submit to the electors of the city a proposed ordinance that would be void even if approved by a majority of the electors, is too clear for discussion or the citation of authorities." [State ex rel. Davies v. Reno City Council, 36 Nev. l. c. 336.]

II. This brings us to the question of whether the proposed ordinance would be valid or invalid if adopted. For the purposes of this opinion, it will suffice to quote the title, the enacting clause and section 1 of the ordinance, as follows:

"An Ordinance

"To condemn the capital stock of the Kansas City Public Service Company; to make a public improvement; to prescribe the limits of

the district within which private property shall be deemed to be benefited; to authorize the issue of Condemnation Fund Bonds; to create and appoint a Board to control the street railway system of the city; to establish a Street Railway Fund from which to pay the interest and principal of the bonded debt of the street railway system; to levy a special assessment for the Street Railway Fund, and for other appropriate regulations.

"Be it Ordained by the People of Kansas City, as Follows:

"Section 1. DESCRIPTION OF PROPERTY TO BE TAKEN: The shares of capital stock, both common and preferred, in the hands of the owners of the Kansas City Public Service Company, shall be and are hereby condemned and taken for the people of Kansas City, Missouri, and devoted to a public use, *as provided in Article 6 of the Charter of Kansas City.*

"Immediately upon final confirmation of the verdict in the condemnation proceedings, proper steps shall be taken to transfer to the city of Kansas City, Missouri, title to all property belonging to the Kansas City Public Service Company, for said city to have and to hold *under the power granted in Paragraph 11, Section 1, Article 1, of the Charter of Kansas City,* as a system of public transportation." (Our italics.)

Condemnation proceedings, by which private property is taken for public use, operate *in invitum,* in derogation of common right, and, for that reason, the rule of *strictissimi juris* is applied to such proceedings. [Orrick School District v. Dorton, 125 Mo. 439, 28 S. W. 765; City of Tarkio v. Clark, 186 Mo. 285, 85 S. W. 329; City of St. Louis v. Glasgow, 254 Mo. 262, 162 S. W. 596.] "The exercise of the power (of eminent domain) being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out of argument and inference, it does not exist." [1 Lewis on Eminent Domain, sec. 371.] It devolved upon relators to show that the city has the authority to acquire the property of the Kansas City Public Service Company in the manner prescribed by the proposed ordinance, that is, by condemning the capital stock of the company. This, relators have failed to do. And our investigation has not disclosed such authority. It will be noted that Section 1 of the proposed ordinance says that the capital stock of the company shall be condemned "as provided in Article 6 of the Charter of Kansas City," and that the title to all of the company's property shall be taken and held by the city "under the power granted in Paragraph 11, Section 1, Article 1, of the Charter of Kansas City."

Section 128 of Article VI and paragraphs 9 and 11 of Section 1 of Article I of the city's charter read as follows:

"Sec. 128 (Art. VI). Power of Eminent Domain. The city may exercise the power of eminent domain and the power of determining the damage caused to property by any public work or improvement or use, or restriction of use, and the power of making and levying special assessments, in the manner prescribed in this charter, or in any other lawful manner. And whenever any property, land, easement, right of way, use or right of any character is taken or damaged by the city for public use, just compensation shall be paid to the owner or owners thereof. Such compensation shall be ascertained and assessed by a jury of six freeholders of the city, in the manner provided in this charter, or as otherwise provided by law. But nothing in this article contained is intended or shall be construed as in any way or degree limiting or defining the city's rights and powers under its police power, or as requiring the payment of compensation to any person affected by the exercise of such police power."

(The city shall have the power:)

"('9) (Sec. 1 of Art. I) To exercise the right of eminent domain and to condemn property, real or personal, or any right, interest, easement, restriction or use therein, within or without the city or State for any public or municipal use or purpose.

"(11) (Sec. 1 of Art. I) To acquire, construct, own, operate, maintain, sell, lease, mortgage, pledge, or otherwise dispose of public utilities or services or any estate or interest therein; or any other utility or service to the city, its inhabitants or any part thereof."

Section 7707, Revised Statutes 1929, says: "Any such city [any city of 75,000 inhabitants or more, such as Kansas City] may acquire, by purchase, condemnation or construction, waterworks, gas works, electric light works, street railways, telegraph and telephone systems, heating plants, ice or refrigeration plants, or any other plant, system or public service institution, within or outside of the limits of such city, for the use of the city or its citizens, . . ."

▮ We find nothing in the provisions of the city's charter above quoted or in the statute above quoted, or in any other provision of the city's charter or the general laws of this State, which indicates a legislative intention to vest the city with authority to acquire the property of a public service company by condemning the capital stock of such company, and we are aware of no case in which similar municipal or state laws have been so interpreted. Sec. 408 of Art. XV of the city's charter provides that any franchise granted by the city shall be subject to the right of the city to acquire the

"plant and property" used in the exercise of the franchise, upon the terms and conditions specified in the franchise, and that nothing in the section shall be construed as a limitation on the right of the city to acquire "said property" by a condemnation proceeding. ■ The use of the words "plant and property" in this section, and the general use of the words "property" and "land" in the provisions of the city's charter relating to the condemnation of private property for public purposes, clearly indicates, we think, that the framers of the city's charter intended that the taking of private property for public purposes should be accomplished by condemning the *physical property*, and not otherwise. ■ We conclude, therefore, that Kansas City is without authority to acquire the property of the Kansas City Public Service Company by condemning the capital stock of the company, as provided in the proposed ordinance, and that the ordinance, if adopted, would be unconstitutional and of no force or effect, because the condemnation of the company's property in such manner would result in depriving the company of its property without due process of law. [Sec. 1, Amendment XIV, Const. of U. S.; Sec. 30, Art. II, Const. of Mo.] This conclusion renders it unnecessary for us to consider whether or not the adoption and execution of the ordinance would violate other provisions of our Federal and State Constitutions, as claimed by respondents.

It follows that relators' motion for judgment on the pleadings should be overruled, and that the alternative writ should be quashed. It is so ordered. All concur.