414 P.2d 963

**GREAT SALT LAKE AUTHORITY,**
**Plaintiff and Respondent,**

v.

**ISLAND RANCHING COMPANY, Defendant and Appellant.**

No. 10395.

Supreme Court of Utah.

June 2, 1966.

---

Parsons, Behle, Evans & Latimer, Robert S. Campbell, Jr., Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Richard L. Dewsnup, Asst. Atty. Gen., for respondent.

CROCKETT, Justice:

The plaintiff, Great Salt Lake Authority, seeks to take by condemnation proceedings 4198 acres of land belonging to defendant, Island Ranching Company, on the north end of Antelope Island which lies along the eastern shore of Great Salt Lake. Defendant filed a motion to dismiss the complaint, challenging the plaintiff's authority to condemn its land, which motion was denied. Defendant petitioned for an intermediate appeal, urging that determination of the issue raised by its motion might eliminate the necessity of further proceedings and trial. We agreed that this is an appropriate situation for the intermediate appeal procedure provided for by Rule 72(b), U.R.C.P., and granted the petition.

The Great Salt Lake Authority was created and derives whatever power and prerogatives it has from Chapter 161, S.L.U. 1963 (now Chapter 8, of Title 65, U.C.A.). It is entitled "An act relating to the development of all of the mainland, islands, minerals and water within the Great Salt Lake meander line established by the United States surveyor general." The defendant contends that the act is constitutionally invalid because: 1) it fails to prescribe definite limits to plaintiff's territorial boundaries; 2) it contains an unlawful delegation of legislative power; and 3) in any event it does not grant plaintiff authority to take defendant's property by eminent domain.

In addressing the question of the constitutionality of this act of the legislature, we bear in mind the foundational precepts: that all presumptions favor validity; that courts will strike down such an act with reluctance and only where that is clearly necessary; and that in case of uncertainty the act should be construed so that it will be constitutional whenever that reasonably can be done.[1]

*Limitation of territory.*

In its first ground of attack on the validity of the act defendant points out that there is no express spelling out in the body of the act the limits of the territory in

1. See Donahue v. Warner Bros. Pictures Dist Corp., 2 Utah 2d 256, 272 P.2d 177; Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435; Reynolds v. Milk Commission of Va., 163 Va. 957, 179 S.E. 507.

48

which the plaintiff shall operate. It urges that although in Sec. 1 and 6(8) the act refers to " * * * development of the Great Salt Lake *and its environs*," it is nonetheless indefinite as to geographical limits of plaintiff's jurisdiction and the effect it would have upon the defendant's property. It is a cardinal rule of statutory construction that all parts of the enactment should be considered together so as to produce a harmonious whole and to give effect to the intent and purpose to be divined from the entire act.[2]

Applying that principle here leaves no doubt that the phrase, "Great Salt Lake and its environs," even though appearing in sections not specifically delineating boundaries, was intended to describe the area over which the plaintiff was to have jurisdiction. Conceding defendant's further point, that the term "and its environs" may give rise to some uncertainty, we can get help by looking to the title. We are aware that in many decisions, including our own, it has been stated that the title is not part of the act. This is true in the sense that it is not integrated into the operating portion of the legislation; and that it will not be permitted to contradict or defeat a plainly expressed intent; nor can it be used to create an ambiguity or uncertainty when the language of the body of the act is clear.[3] But where such clarity is lacking it is permissible to look to the title of the enactment to shed light on and clarify the meaning.[4] As hereinabove recited, the title of this act describes the area plaintiff is charged with developing as "within the Great Salt Lake meander line established by the United States surveyor general." The same language is recited in Sec. 65-8-6(8) of the act. This gives a sufficiently clear and satisfactory indication of what is meant by "the Great Salt Lake and its environs."

The fact that in one small area on the west side of the lake the meander line has not as yet been surveyed and established does not affect this conclusion. It is something which is susceptible of ascertainment. Beyond this and more important insofar as the rights of this defendant are concerned, is the fact that the act in Sec. 65-8-6(10) expressly mentions Antelope Island, on which the defendant's property is located, as land which may be acquired and developed by the plaintiff.

*Delegation of legislative authority.*

Defendant's second objection to the statute is that it contains no definite stand-

2. See Western Auto Transport, Inc. v. Reese, 104 Utah 393, 140 P.2d 348; Washington County v. State Tax Comm., 103 Utah 73, 133 P.2d 564.

3. See 2 Sutherland, Statutory Construction § 4802 (3d Ed. 1943).

4. See Donahue v. Warner Bros. Pictures Dist. Corp., supra, footnote 1; 2 Sutherland, Statutory Construction, supra, footnote 3.

ards or limitations on the authority granted to the plaintiff, but is so broad and general that the latter would be at liberty to act arbitrarily, solely in the exercise of its own judgment, in connection with the program of developing the lake and the lands in and about it. It urges that this is an unlawful delegation to the plaintiff of prerogatives which belong only to the legislature. Complaint is made particularly of the generality of the grant:

> The authority shall have power to determine the policies and develop the program best designated to accomplish the objectives and purposes set out in this act.

This correlates with Sec. 65–8–6(5) which provides:

> The authority shall co-ordinate multiple use of property for such purposes as grazing, fish and game, mining and mineral removal, development and utilization of water and other natural resources, industrial, and other uses in addition to recreational development * * *.

It is argued that this grant of power is so broad that it allows the plaintiff to exercise its own judgment in such a general way that it leaves the defendant and others unable to determine what their rights are under the act and are thus left subject to the whim and caprice of the plaintiff.

In the nature of such a project as envisioned by this act it would be impractical to spell out every last detail of what must be done to carry out its purposes. We offer no defense of the act as a model of legislative draftsmanship. But when it is all considered together, it will be seen that it provides: for the establishment of the plaintiff as an administrative agency; with five "members" to be appointed by the Governor; for their terms of office and succession; who are to carry out the purposes and objectives above referred to. Its activities are limited by safeguards which prevent the arbitrary overriding of the rights of the defendant or others.[5] Sec. 65–8–6(5) states that the plaintiff shall "adopt such *reasonable* rules and regulations as the authority may deem advisable to insure the accomplishment of the objectives and purposes of this act." This requirement prevents arbitrary or capricious actions by the plaintiff since the standard of reasonableness is susceptible of interpretation and of affording protection in the event of claimed encroachment. The exercise of the most far-reaching power granted, that of eminent domain, of which the defendant is complaining in this action, is expressly made subject to the protections set forth in our general law governing that subject, Chapter 34, Title 78, U.C.A.1953. On this there is

5. See 1 Davis, Administrative Law Treatise, §§ 2.08 and 2.15 (1958); Jordan v. State Board of Insurance, 160 Tex. 506, 334 S.W.2d 278; Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136.

the further precaution in that Sec. 68–8–6 (1) precludes the plaintiff from pledging the credit of the state to acquire either real or personal property without the consent of the legislature. We fail to see that there is any such delegation of legislative authority to the plaintiff as to render the act unconstitutional on that ground.

*Authority to use eminent domain.*

Defendant's argument that the plaintiff has no authority to take its property on Antelope Island by eminent domain is predicated upon what impresses us as a somewhat strained analysis of the pertinent sections of the statute. Sec. 65–8–6(10) provides:

> The authority is authorized to take any steps that are necessary to secure such part of Antelope Island by donation, purchase agreement, lease, *or other lawful means* as deemed necessary for recreational use.

 Defendant argues that under the doctrines of ejusdem generis and expressio unius est exclusio alterius, the phrase "or other lawful means" must take its meaning from the preceding words which refer only to *voluntary* means of acquisition. We do not think that argument is sound here. The rules of statutory construction referred to were developed to aid in determining the intent of legislation where meaning is obscure or uncertain and not to destroy that which is clearly apparent.[6] We need not go beyond the act itself to learn what was intended therein by the phrase, "or other lawful means." Sec. 65–8–6(1) provides that the Authority shall have power to acquire real and personal property "by all *legal* and proper *means*," and goes on to further define that phrase as "including purchase, gifts, devise, *eminent domain,* lease, exchange or otherwise." It seems hardly necessary to add that it is obvious that the purposes of the act could not be carried out without acquiring property, which fact the legislature was fully aware of and made provision for as just indicated. Our conclusion herein is implemented by the fact that one of the stated objectives in improving the area in question is for tourist and recreational uses; and that Sec. 65–8–6(10) expressly mentions the development of Antelope Island for those purposes.

 We are not concerned with considerations as to the advisability or the practicability of this act. The question as to the wisdom of the project is for the legislature. As this court has heretofore stated, there is undoubtedly plenty of room within the limits of constitutional power for legislation which may be considered by some as ill-advised, improvident or unwise.[7] But

---

6. See State ex rel. Public Service Comm. v. Southern Pacific R. R. Co., 95 Utah 84, 79 P.2d 25 and cases therein cited.

7. See Kimball v. City of Grantsville City, 19 Utah 368, 57 P. 1, 5, 45 L.R.A. 628.

the legislature is the voice of the people who hold the plenary power of government except as limited by the Constitution.[8]

For the reasons herein set forth, we are in accord with the ruling of the trial court in refusing to hold unconstitutional Chapter 8, Title 65, U.C.A.1953, the act creating the plaintiff, Great Salt Lake Authority. The order denying the motion to dismiss is affirmed. No costs awarded. (all emphasis added).

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting):

I dissent. The appellant says the Great Salt Lake Authority is 1) unconstitutional (a) because it does not define any territorial limits, (b) it is vague, and (c) takes private property without due process. I agree.

In our American system a person's private property is supposed to be inviolable, unless the taking of it is urgent and for the commonweal, is designated with exactitude, and proven to be absolutely necessary by the highest type of evidence, backed by the highest type and clearest of legislation. None of these has been shown either in the stipulated facts of this case, nor the difficult-to-understand wording of a concededly poorly drawn, ambiguous statute, nor in what I believe are platitudes in the main opinion, irrelevant here.

The main opinion seems to me to be a constitutional ink eradicator that eliminates the apparently unwanted language penned by the framers of the constitution.

Let's take 1) (a) above about not clearly defining the territory to be taken: neither the body of the act nor the Title clearly defines it. This point urged by appellant is sloughed off by the main opinion's offering that "It is a cardinal rule of statutory construction that all parts of the enactment should be considered together so as to produce a harmonious whole and to give effect to the intent and purpose to be divined from the entire act." It is submitted that the word "divined" could not have been used better since it means to guess, and that's what the main opinion is doing, judicially to pre-empt objectivity as to popularity without facing up to the statute on the basis of legal principles.

The majority says that "Great Salt Lake and its environs" was the area intended over which the Great Salt Lake Authority was to have authority. Where is "Great Salt Lake and its environs"? Are they at the present level of the lake or at that level extant at the time of the act, when it was more than four feet below the present level or according to a surveyed meander line? Does the Great Salt Lake Authority's authority vary as to the lake's rise and fall? If so, the act is unconstitutional for indefiniteness,

8. See statement in Wood v. Budge, 13 Utah 2d 359, 374 P.2d 516.

since the territory easily could have been described by surveyed sections, or simple square mileage, irrespective of rise and fall of the lake's level or its elusive "meander line,"—which to date has not been surveyed by the Surveyor General. There is 7.1% of the so-called "meander line" that remains unsurveyed. The rest of such so-called meander line has been surveyed piecemeal over many decades. The so-called "meander line" surveyed thusly many years ago, after the lake's shrinkage to that of today, would represent a highly different boundary line and would represent thousands of erstwhile inundated land and a huge acre-feet area of disappeared water, representing two different boundaries.

If "meander line" is synonymous with "high water mark" as some say it is, it would be synonymous with Lake Bonneville. This would give the Great Salt Lake Authority authority to condemn the L. D. S. Temple, my house, which sits on one of Bonneville's sand bars, and very likely that of the main opinion's author. It would take in practically all of Utah and parts of Colorado and Nevada, before Miss Bonneville pulled stakes and took most of herself into the Pacific Ocean by a jailbreak near Preston, Idaho.

The main opinion says that conceding that the term " 'and its environs [gives] rise to some uncertainty * * * we can get help by looking to the title." It concedes that we have said the title is not part of the act, but then says it can be used when the act is not clear. This is an admission that the act is not clear. If this concession is made, a man should not be stripped of his property by an act that is unclear, simply by looking at the title, which the main opinion says is not a part of the act. This is like saying one's property may be taken under a confusing, concededly obfuscated act, if we can look to an editorial in a local newspaper to arrive at an unobjective objective.

The main opinion opines that "The fact in one small area [1] * * * the meander line has not as yet been surveyed does not effect this conclusion. It is something that is susceptible of ascertainment." This is a statement that would make any self-respecting lawyer go bald if he were examining the title to this property for a client wanting to buy it with assurance, that the title is clear, and tried to find out where the property is situated. When it is said that the area is "susceptible of ascertainment," I think the main opinion should tell when and by what assurance. For much more than a half century the meander line has stumbled around like a drunken sailor who hasn't reported yet to his ship. The act here contains a most peripatetic description, designed and devoted to eject a private property owner from his land, unparalleled since Tittlebat Titmouse. I think this court has

1. Not so small, and not *one*, but *two* areas.

no right judicially to legislate in order to accomplish such a ridiculous, unfair and unreasonable result.

When the main opinion says that all presumptions favor validity of the statute, it forgets that there is another and much stronger presumption,—almost a conclusive one,—that an admittedly confusing, vague and indefinite statute being in derogation of taxpayers' and property owners' rights pre-empts the presumption favoring validity of the statute. Where the statute is confusing, vague and indefinite no presumption of *any* kind should be indulged. The statute should be held to be constitutionally offensive for that reason, where private property is proposed to be taken.

It is interesting to note the inconsistency of the present opinion, with that in Shields v. Toronto.[2] In the latter case the language was crystal clear. The *Constitutional* provision said no member of the legislature could be elected to office if the emoluments of that office were increased during his term in office.[3] The language there could not have been clearer. The fact is that the emoluments of the office sought *were* increased. Yet by what I believe was tortuous reasoning it was said in substance and effect that the language of the constitution interpreted broadly was not clear, and that a deviation from its terms did not

violate it. In the instant case, the main opinion admits the language of the statute is confusing and uncertain, but now in reversion, says we will make it clear by the same sort of tortuous reasoning. The upshot: the court is judicially legislating, saying we will make a clear constitutional provision unclear, if we so choose, and will make an unclear statutory provision clear if we so choose.

I agree with the main opinion that the legislation, subject of this litigation, is no classic example of draftsmanship and is wanting in certainty. I certainly subscribe to the state's amen thereto when counsel for the state said in argument that this act is not an example of careful legislative drafting, by no means has the clarity that is desired and that he was not in this court to defend it as an ideal clear-cut piece of legislation from a drafting standpoint. Both concede that the statute is not clear, joined by the main opinion. This being the case, there is no escape from the conclusion that all doubts should be resolved in favor of the property owner, and that the statute should be invalidated constitutionally on the grounds of uncertainty and vagueness.

This alone should be sufficient to reverse this case, although another cogent reason is that neither the Title of the act nor the body thereof clearly or even unclearly tells

2. 16 Utah 2d 61, 395 P.2d 829 (1964).

3. Art. VI, § 7, Utah Constitution.

what the "objectives and purposes" of the act are.

The case should be reversed.

CALLISTER, Justice (dissenting) :

I am in accord with the conclusion of the Chief Justice, and his reasons therefor, that the statute under consideration is constitutionally invalid. However, a few observations seem appropriate.

The exercise of the power of eminent domain, being contrary to the inherent rights of property ownership by individuals cannot be implied or inferred from vague or doubtful language in a statute, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out of argument and inference, it does not exist.[1]

First, with respect to the "limitation of territory," the majority opinion seems to concede that "the Great Salt Lake and its environs" is indefinite, but takes refuge in the title of the act which makes reference to "the meander line established by the United States surveyor general."[2] The title is not a part of the act.[3] In rare instances it may be used to clarify the meaning of the enacted statute. However; it cannot be used to supply a jurisdictional defect or omission which would render the act constitutionally invalid.

Second, as to the issue of "delegation of legislative authority," a careful scrutiny of both the act and the main opinion fails to reveal the "objectives and purposes" of the legislation. The act itself makes several references to "the accomplishment of (its) objectives and purposes," but nowhere is there a definitive expression of the same.

The majority opinion attempts to fill this void by quoting, incompletely, Sec. 65-8-6 (5) and then observing that the members of the authority "are to carry out the purposes and objectives above referred to." The "above referred to" could only refer to the incomplete quotation. The section, in its entirety, reads:

The authority shall coordinate multiple use of property for such purposes as grazing, fish and game, mining and mineral removal, development and utilization of water and other natural resources, industrial, and other uses in addition to recreational development, *and adopt such reasonable rules and regulations as the authority may deem advisable to insure*

---

1. State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066 (1932).

2. As pointed out in the opinion of the Chief Justice, this is a rather indefinite description of the authority's territorial limitation.

3. Majority opinion.

*the accomplishment of the objectives and purposes of this act.*[4]

Again, we might inquire, what are the limitations of the authority in exercising a power of eminent domain in "accomplishing" its undefined "objectives and purposes?"

Third, observation is to be made as to the "authority to use eminent domain." Sec. 65–8–6(10), quoted in the majority opinion, refers specifically to Antelope Island. It empowers the authority to acquire it, or any part thereof by means of *voluntary* conveyance—nothing more. However, the majority opinion would like to give the authority the power of condemnation by referring back to Sec. 65–8–6(1). If this latter section had force and meaning as to Antelope Island, then 65–8–6(10) is a redundancy. Accepted statutory construction prohibits this conclusion. Meaning must be given to subsection 6(10) which meaning is that the legislature intended a different mode of acquisition of Antelope Island (which negated the use of eminent domain).

Finally, without passing upon the merits or demerits of the "objectives and purposes" of the legislative enactment, whatever they might be, I cannot in good judicial conscience put my stamp of approval upon a statute, involving the possible deprivation of a person's property, that is as vague, uncertain and incomprehensible as the one before us.[5]

4. The emphasized words are those not included in the section as set forth in the majority opinion. However, that opinion does quote this portion later on as being a "safeguard" to the exercise of the authority's power of eminent domain.

5. "Vague laws in any area suffer constitutional infirmity," Ashton v. Kentucky, 86 S.Ct. 1407, decided May 1966.