483 P.2d 1296

Helen C. EMERY, As Guardian for Brent Wesley Varley, Patrick J. Varley and Mark Robert Varley, minors, and Christine Varley, Plaintiffs and Appellants,

v.

The STATE of Utah, a sovereign, and John Doe; whose true names are unknown, agents and employees of the State of Utah at the Utah State Hospital, Defendants and Respondents.

No. 12173.

Supreme Court of Utah.

April 13, 1971.

1

Warren M. Weggeland, Gerald G. Gundry, Salt Lake City, for plaintiffs and appellants.

Vernon B. Romney, Atty. Gen., Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

HENRIOD, Justice:

Appeal from a summary judgment dismissing a complaint for wrongful death of a voluntary patient [1] in the State Hospital, where such dismissal was based on sovereign immunity generally, and by way of exception to the Utah Governmental Immunity Act, [2] wherein the State waives such immunity *except* under provisions reciting specific circumstances,—the pertinent one about which we are concerned here being Subsection 10(10) [3] of the above mentioned Act. Affirmed.

There is no contention made that the decedent was admitted to the hospital other than as a voluntary patient under Sec. 64–7–29, U.C.A.1953 (Footnote 1, below). Appellant *does* urge that being a voluntary patient, her injury did not "arise(s) out of the incarceration" in a "jail" or "other place of legal confinement," where sovereign immunity is perpetuated under the legislation. This is based on an assumption that by using the word "incarceration," the legislature must have meant "confinement" in a "jail," under some sort of compulsion, and that there is none here.

■ We are of the opinion that in reading the whole section, the words "other place of legal confinement" obviously referred to something other than a "jail" or "state prison," including a hospital where one cannot be released without some kind of permission.

Appellants point out that a voluntary patient is entitled to the protection of Secs. 64–7–30 [4] and 31 [5] of the act. Against this conclusion we hold no brief,—but we can-

---

1. Sec. 64–7–29, Utah Code Annotated 1953 (Replacement Vol. 7A): "The superintendent * * * may admit * * * any individual who is mentally ill * * * who * * * applies therefor * * *."
2. Title 63–30 (L.1965, Ch. 139), U.C.A. 1953 as amended.
3. Title 63–30–10(10), (L.1965, Ch. 139, Sec. 10), U.C.A.1953 as amended: "Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee * * * *except* if the in-

jury: * * *
   "(10) arises out of the *incarceration* of any person in any state prison, county or city jail or other place of legal confinement, * * *."
4. "The superintendent * * * shall discharge any voluntary patient *who has recovered* and may discharge" him "whose hospitalization he determines to be no longer advisable."
5. "A voluntary patient who requests his release * * * shall be released forthwith except that * * *

not agree with counsel that the patient here "could have, at her written request, been released forthwith,"—and that ergo, she was not an inmate of or a person under restraint at or was free to leave the hospital forthwith, upon request. There was no request here for a release, but even so, counsel's urgence that there was or is no involuntary confinement or restraint under the act cannot stand the test of the statute cited in such conclusion, and such contention amounts to nothing save a non sequitur.

■ It is true that a patient may demand his release *forthwith,—except* that he cannot obtain it if the superintendent, within 48 hours of such demand or request, goes to court to prevent it, which action, if pursued successfully may result in no release at all, and may result in "confinement" or "incarceration" for the patient's lifetime. Hence, it is obvious that the patient is "confined" against his will for whatever period of time he has been at the hospital, up to the time he demands his release, and even then he is confined for another 48 hours waiting for the superintendent to act, and thereafter for an undetermined time if the latter is successful in obtaining a judicial commitment until the further order of the court or hospital authority. We think the legislature had no intention of waiving sovereign immunity in the case where a hospital attendant or guard is involved any more than it did where a nurse in a prison or a jailer is involved, and in logic and sense it seems that to treat the two differently would reflect a departure from legislative intent, simply by playing upon the adjectives "voluntary" and "involuntary," when it is obvious that there was a "confinement" at the time of injury where no question of release was involved and at a time when no choice had been made.

As a practical, not legal, matter, perhaps, it seems obvious that to hold otherwise would be to dry up a salutary and wholesome procedure designed to ease the stigma of an official adjudication that one is insane,—a result that friends and relatives would unrelish, abhor and be unwilling to accomplish, thus denying to many an unfortunate a treatment sorely needed. Secondly, at the other end of the spectrum, the hospital authorities and attendants would hesitate to accept "voluntary" patients, and no doubt would refuse to admit them, preferring not to face a lawsuit, when they would be immune therefrom by the simple device of accepting only those admitted by

"(3) If the superintendent * * * within forty-eight hours * * * files with the district court * * * a certification that in his opinion the release * * * would be unsafe * * release may be postponed * * * for as long as the court * * * determines to be necessary for the commencement of proceedings for judicial hospitalization, * * *."

**4**

judicial decree. Certainly the legislature did not intend such a result when they employed the words "incarceration" and "place of legal confinement" as they did, and certainly they implemented such words in a fashion so that even a "voluntary" patient was as much confined as was an "involuntary" one until certain steps were taken to obtain a "release,"—which must have been something other than "freedom," —namely, "confinement." We might suggest that a voluntary patient at the hospital is as much "confined" and has as little freedom as a mentally alert trusty in a jail or prison.

CALLISTER, C. J., and CROCKETT, J., concur.

TUCKETT, Justice (dissenting).

I respectfully dissent. As mentioned in the main opinion, Mrs. Varley was admitted to the Utah State Hospital pursuant to the provisions of Section 64–7–29, U.C.A. 1953, which provides as follows:

The superintendent of the Utah State Hospital may admit for observation, diagnosis, care, and treatment any individual who is mentally ill or has symptoms of mental illness and who, being sixteen years of age or over, applies therefor, and any individual under sixteen years of age who is mentally ill or has symptoms of mental illness, if his parent or legal guardian applies therefor in his behalf.

The plaintiffs here claim that they have the right to maintain this action under the provisions of Section 63–30–10, U.C.A. 1953, which section is a part of the Governmental Immunity Act. The provisions of that section are as follows:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

\*  \*  \*  \*  \*  \*

(10) arises out of the incarceration of any person in any state prison, county or city jail or other place of legal confinement, \* \* \*.

The defendants contend that Mrs. Varley's status came within the exception and that sovereign immunity is a complete defense to the plaintiffs' cause of action. The court below was of the opinion that the Utah State Hospital is an institution of legal confinement within the meaning of the statute above referred to and there was no waiver of the defense of sovereign immunity.

In determining the intent of the legislature we must consider and give meaning to the entire provision of subsection (10) including the word "incarceration." The word "incarceration" is synonymous with

the word imprisonment[1] and it would seem that a reasonable interpretation of the meaning of that word as used by the legislature was not intended to include a voluntary patient at a state hospital. I am of the opinion that the provision of the statute here referred to was given an unduly restrictive meaning by the majority.

I would reverse.

ELLETT, Justice (dissenting).

I concur in the dissent of Mr. Justice Tuckett but wish to add that the language of the statute "other place of legal confinement," in my opinion, refers to such other places as the Industrial School and detention homes where delinquent minors are detained.

1. State ex rel. Kahn v. Woodward, 123 Ind. 30, 23 N.E. 968; Longway v. State of Maine, et al., 611 Me. 430, 213 A.2d 519; Black's Law Dictionary (3d Ed.), p. 941.