William SCOTT, by and through his guardian ad litem, James Scott, Plaintiff and Appellant,

v.

SCHOOL BOARD OF GRANITE SCHOOL DISTRICT, a corporate entity, and John Doe, an Individual, Defendants and Respondents.

No. 14766.

Supreme Court of Utah.

Aug. 16, 1977.

D. Kendall Perkins, Salt Lake City, for plaintiff and appellant.

Allan L. Larson, of Snow, Christensen & Martineau, Salt Lake City, for defendants and respondents.

HALL, Justice:

This is an appeal from a summary judgment in favor of defendants on an action alleging negligence causing injury to the minor's finger which ultimately resulted in amputation.

The injury was sustained on December 20, 1974, while a member of a shop class at Valley Junior High School. The minor plaintiff was in the process of changing a drive belt on a drill press when a fellow student turned on the press.

Notice and claim for compensation was forwarded to defendant School Board on March 26, 1975, and because of defendant's inaction suit was filed. Defendant School Board responded by motion to dismiss for failure to comply, or allege compliance, with the applicable statute [1] and at the hearing thereof orally moved to have the motion considered as one for summary judgment pursuant to Rule 12(b), U.R.C.P. This motion was granted without objection nor did plaintiffs move to amend their pleadings. The parties stipulated as to the authenticity of plaintiff's letter notice, referred to above, mailed to defendant School Board on March 26, 1975, and received March 31, 1975, and the same was marked as an exhibit and received by the court, et seq.

Plaintiffs raise three points on appeal: (1) the differing notice requirements of Sections 12 and 13 of Title 63, chapter 30, U.C.A., 1953, creates discrimination constituting an unconstitutional denial of due process; (2) the lower court's action in hearing the motion as one for summary judgment was contrary to Rules 12(b) and 56(b) and (c), U.R.C.P.; and (3) the minor

---

1. Section 63-30-1, U.C.A., 1953, "Utah Governmental Immunity Act."

plaintiff, being only 12 years of age, should not be barred from bringing the action.

The case of *Gallegos v. Midvale City*[2] presented a similar fact situation and this court determined that the then existing 30-day notice requirement of the statute[3] did not deprive a two-year old child of due process and equal protection when the minor's parents failed to make a timely claim. Consequently, the minor's claim was barred, however, a strong dissenting opinion was filed citing a number of authorities to the contrary.

The Utah Legislature promptly thereafter recognized the constitutional problems inherent therein and during its 1973 session amended the statute[4] as it pertains to minors adding the following:

. . . If the person for whom a claim is made is a minor, then the claims covered by this section may be so presented within the time limits specified above or *within one year after the person reaches the age of majority, whichever is longer.* [Emphasis added.]

In *Varoz v. Sevey*[5] this court had before it the interpretation of the notice requirements of the Governmental Immunity Act[6] as they pertain to the claims of minors and it again held that the minority of the plaintiff (four-year old) did not excuse failure to comply. It should be noted, however, that the decision was handed down prior to the enactment of the legislative amendment referred to above.

A further statutory provision is also involved here which is Section 78–12–36(1), U.C.A., 1953, (1975 Supp.) which reads as follows:

Effect of disability.—If a person entitled to bring an action, other than for the recovery of a real property, is at the time the cause of action accrued, either:

(1) Under the age of majority; or,

(2) Mentally incompetent and without a legal guardian; or,

(3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court, for a term less than for life;—

The time of such disability is not a part of the time limited for the commencement of the action.

The foregoing section was deemed not applicable in *Gallegos,* footnote 2 above, nor in *Greenhalgh v. Payson City,*[7] again by a divided court. The rationale adopted was that the various specific statutes of limitation take precedence over the general provisions of title 78, U.C.A., 1953, and that the specific requirement of notice takes further precedence at least as it may affect minors in the care of natural guardians.

A minor is incapable of giving notice by the very virtue of his minority, nor may he bring an action in his own behalf while a minor. He simply has no standing by statute[8] and an action by or against a minor requires the appointment of a guardian ad litem.[9]

The parents, or natural guardians, have no specific legal duty to perform and have no responsibility to their minor off-spring other than their moral obligation. Consequently, in matters of this kind, when a parent, natural guardian, fails for one reason or another to give notice, file suit, or otherwise protect the minor's legal interests, the minor is left completely without a remedy. This was undoubtedly one of the prime considerations which prompted the legislature to toll the statute during the minority of a claimant against municipalities. Their reason for not so providing in governmental immunity cases as we are

2. 27 Utah 2d 27, 492 P.2d 1335 (1972).

3. Section 10–7–77, U.C.A., 1953.

4. Section 10–7–77, U.C.A., 1953 (1975 Supp.).

5. 29 Utah 2d 158, 506 P.2d 435 (1973).

6. Section 63–30–13, U.C.A., 1953.

7. Utah, 530 P.2d 799 (1975).

8. Section 15–2–1, U.C.A., 1953 (1975 Supp.): "The period of minority extends in males and females to the age of eighteen years; . . . ."

9. U.R.C.P., Rule 17(b): "When an infant . . . is a party, he must appear either by his general guardian, or by guardian ad litem . . . .."

faced with here is entirely unclear. However, the general legislative intent to protect the causes of minors is abundantly clear by said amendment and the specific provisions of the general statute of limitations.

Notwithstanding the prior pronouncements of this court, a minor claimant is justly entitled to the protection afforded by said Section 78–12–36(1), U.C.A., 1953, in all cases, including notice requirements of the type contained in the Utah Governmental Immunity Act. To hold otherwise is a denial of due process and equal protection.

Having so concluded, the Court does not reach the remaining assignments of error.

The summary judgment is vacated and set aside and the case is remanded for further proceedings consistent herewith. No costs awarded.

ELLETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

CROCKET, Justice (dissenting).

This is a suit against a school district, a political subdivision of the State,[1] which normally would be protected by sovereign immunity. The doctrine is of ancient origin and various reasons have been given in justification, including that "the king (or the sovereign) can do no wrong" and that the courts should not render judgment against their creator the (sovereign).[2] For those doctrines I offer no defense or justification. But there are certain valid propositions which have a bearing upon justification for this policy. An important one is that such public services are rendered by the sovereign (the people) and that those who accept the benefits should bear whatever risk may be involved in receiving them; and in case of injury should not turn upon and in effect sue their benefactor, i. e., themselves as members of the public.

Another of the reasons for that doctrine and the restrictions thereon is that in our system there is a continual turnover of public officials, in whose hands the protection of the public interests must be left. Somewhat related to the foregoing, there is what is sometimes referred to as the "deep-pocket" notion: that the public treasury is practically inexhaustible and is therefore fair game for the assertion of claims. So there always exists the possibility of groundless, questionable, or even spurious claims.

In any event, for the above, or whatever reasons, which need no further discussion here, the principle of sovereign immunity has been firmly engrained in our law ever since the origin of this sovereign state.[3] It was clearly so declared and reaffirmed in our recently adopted Governmental Immunity Act, subject only to the exceptions and the conditions provided for in that act:

Section 63–30–3, U.C.A.1953: Immunity of governmental entities from suit.— *Except as may be otherwise provided in this act, all governmental entities shall be immune from suit* for any injury which may result from the activities of said entities wherein said entity is engaged in the exercise and discharge of a governmental function. [Emphasis added.]

In conformity with that declaration, as our decisions upon that Act have pointed out, any waiver of sovereign immunity must be found in the express language of the Act and the requirements of the statute must be strictly complied with.[4]

Because of the nature and practical value of sovereign immunity as discussed above, the legislature has decreed in the Act that any claim so waived must be presented within a specified time in order that such claims may be promptly investigated and disposed of; and that any improper practices or conditions may be rectified.

1. Sec. 63–30–2(2), U.C.A.1953.

2. See discussion in 23 Mich.L.Rev. 325; 120 A.L.R. 1376.

3. See *Bingham v. Board of Education,* 118 Utah 582, 223 P.2d 432; *Niblock v. Salt Lake City,* 100 Utah 573, 111 P.2d 800 and citations therein.

4. See *Emery v. State,* 26 Utah 2d 1, 483 P.2d 1296; *Sheffield v. Turner,* 21 Utah 2d 314, 445 P.2d 367.

Section 63–30–13 thereof provides that a claim against a political subdivision is barred unless notice thereof is given within ninety days after the cause of action arises, "provided, however, that any claim filed against a city . . . shall be governed by the provisions of Section 10–7–77, U.C.A. 1953." As was pointed out in the *Gallegos* case [5] this express exclusion of cities from the notice requirement of Section 60–30–13 plainly indicates the legislative intent that cities be dealt within a manner different from the state and its subdivisions. The main opinion correctly states that Section 10–7–77 has now been amended. But it is of the utmost importance to note that that section relates to *cities only* and that it has nothing whatsoever to do with the state or its subdivisions such as school districts.

Contrary to the assertion in the main opinion, this does not reflect any change of philosophy or policy, except as expressly stated. The general rule of statutory construction is that the legislative act is intended to mean just what it says. In amending the statute relating to *cities, and in failing* to so enact with respect to *other public entities,* it should be assumed that they intended just what they did and no more.

It is necessary to point out another fallacy which seems to underlie the reasoning of the main opinion. The statement concerning the helpless condition of minors is not well founded. As pointed out in the cases referred to therein, they have their parents to look after their welfare. Under our law they need not be appointed as guardian, ad litem, or otherwise. Section 78–11–6, U.C. A.1953, expressly authorizes the father, or the mother, to act for redress for injury to a child without such an appointment. It is the most natural thing in the world for a parent to be as vitally concerned with his child's welfare and to be as protective of his interest as he would be of his own. In view of this fact, and the statutory authorization

just referred to, it is not an unfair imposition on the child or his parents to require the latter to be responsible for the child's claim and deal with it as if it were their own, including the giving of notice of a claim as provided in Section 63–30–13. As our law now stands, any party seeking to obtain the benefit of the waiver of sovereign immunity, should not be entitled to claim its benefits without strictly complying with the conditions of that specific waiver of immunity statute, upon which his rights are predicated, rather than upon the general statute of limitations, Section 78–12–36, referred to in the main opinion.[6]

If the court is bent upon intruding into the legislative prerogative and enlarging sovereign immunity beyond what the legislature has done, in addition to what has been said above, there is another proposition that should be given consideration. In our changing and ever more complex society, insurance coverage has become so extensive that it is practically universal; and this is particularly true of governmental entities since the adoption of our Governmental Immunity Act. Further, the premiums which must be charged for insurance are necessarily rated according to the exposure of risk. Therefore, if a governmental entity such as a school district, must have insurance coverage for possible injuries to all of the children from the day they start school until they attain their majority, the result is a wide and permanent opening of the spigot to drain the public treasury to the benefit of insurance companies.

In view of this judicial change in our law it seems appropriate to make these observations. The quality and strength of our system of government is due largely to the separation of powers between its three branches; and its durability is contributed to by safeguarding the integrity of each branch and to the preservation of the balance of power between them.[7] It is the

---

5. Footnote 2, Main Opinion.

6. See *Hurley v. Bingham,* 63 Utah 589, 228 P. 213 (1924).

7. As District Court Judge Joseph Nelson, speaking for this Court, said in *Trade Commission v. Skaggs Drug Centers, Inc.,* 21 Utah 2d 431, 446 P.2d 958, 962 (1968): ". . . it is of the utmost importance that the judicial exer-

peculiar responsibility of the judiciary to judge the prerogatives of the other two branches, as well as its own. It is my conviction that whatever degree of respect the public has for the courts is closely related to the respect the courts and judges themselves have for the law as established; and to their willingness to subvert their own ideas and desires and exercise restraint by not intruding to the prerogatives of the other branches of government; and conversely, disrespect therefor is correlated to failures in that regard.

Because of the seriousness and far-reaching effects of such a change in the law, my judgment is thus: if there is to be any such change it should not be done by the court presuming to so judicially legislate in this individual case. This court has always heretofore adhered to that policy. A good example of an attempt at this very change in the law is *Campbell v. Pack*,[8] in a unanimous decision this court stated ". . . we are not persuaded of the propriety of judicially changing this rule. . . . It has always been the law of this state and the activities, operations and contracts of the state government and other public entities protected by it are based upon that understanding of the law. . . . we believe that if there is to be a change which would have such an important effect upon public institutions and their operations, it should be left entirely to the legislature to determine whether the immunity should be removed; and as to what agencies . ." and as to what extent and when effective.

When the respective interests of the public and of private individuals are weighed against each other, it better conforms to my idea of due process of law and the fair and equal administration of justice for the law to remain as it has existed under our own statutes and our decisional law ever since it was so decided by a unanimous court in

*Hurley v. Bingham*;[9] and as followed and applied in the cases of *Gallegos v. Midvale* and *Varoz v. Sevey*,[10] and as correctly applied by the trial court, until changed by the authority charged with that responsibility, that is, by the legislature[11] in the same manner as it has been done with respect to cities. This would allow for a full and public discussion and consideration of all aspects of the issue and pronouncement of any resolution of the problem so that everyone concerned would know what was going on and the why, what, how and when of such a change in the law.

I would affirm the decision of the district court.

cise restraint and not intrude into the legislative prerogative.", citing *Wood v. Budge,* 13 Utah 2d 359, 374 P.2d 516. See also *Great Salt Lake Authority v. Island Ranching Co.,* 18 Utah 2d 45, 414 P.2d 963.

8. 15 Utah 2d 161, 389 P.2d 464.

9. Footnote 6, supra.

10. Footnotes 2 and 5, Main Opinion.

11. See statement in *Davis v. Provo City,* 1 Utah 2d 244, 265 P.2d 415. See also 86 A.L.R.2d 489, et seq.