801 F.2d 368
 Cheryl HARGETT, as guardian ad litem for Nathaniel Hargett,
a minor, Plaintiff-Appellant,
Cheryl Hargett, an individual and Wesley Hoyt, as guardian
ad litem for Nathaniel Hargett, a minor, Plaintiffs,
v.
David LIMBERG, M.D., an individual, Intermountain Health
Care, Inc., a Utah corporation, d/b/a Fillmore
Hospital and Fillmore Hospital,
Defendants-Appellees.
 No. 84-2724.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 18, 1986.
 
 James R. Black (Fred R. Sylvester, Black & Moore, with him on the brief), Black & Moore, Salt Lake City, Utah, for plaintiff-appellant.
 Dan S. Bushnell (David B. Erickson, Kirton, McConkie & Bushnell, with him on the brief), Kirton, McConkie & Bushnell, Salt Lake City, Utah, for defendants-appellees.
 Before BARRETT, SEYMOUR and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 The medical malpractice claim filed by plaintiff-appellant Cheryl Hargett was dismissed for failure to file it within the time allowed by the applicable statute of limitations. She appeals the dismissal on several grounds: (1) the trial court erred in determining the date she discovered the alleged malpractice; (2) the failure of the mother to timely file an action should not bar a minor child from presenting his claim; (3) the medical malpractice statute of limitations did not bar this particular claim; (4) the statute of limitations violates the equal protection provisions of the United States and Utah constitutions; and (5) the statute of limitations violates the due process and open courts provisions of the Utah constitution. Because a determination as to the application of the medical malpractice statute of limitations in this case adequately disposes of the appeal, we address that issue only and reverse the trial court's dismissal of the action.
 
 
 2
 Nathaniel Hargett, then a 3 1/2 month old baby, began having health problems about February 5, 1979. On February 12, 1979, his mother, Cheryl Hargett, telephoned Dr. David Limberg to report that Nathaniel had a fever, diarrhea and other symptoms. Limberg diagnosed the illness as a viral infection. As the week progressed, Nathaniel's condition worsened. Plaintiff took Nathaniel to the hospital and to Limberg's clinic a number of times during the week and Limberg examined Nathaniel three or four times. Limberg reaffirmed his opinion that Nathaniel had a viral infection that would have to run its course.
 
 
 3
 By Friday, February 16, 1979, Nathaniel's condition had deteriorated considerably. Limberg examined Nathaniel early that day and sent him home with the same diagnosis. Plaintiff telephoned Limberg one or two more times that Friday, and on Friday night Limberg again told plaintiff that Nathaniel had a viral infection.
 
 
 4
 Plaintiff took Nathaniel to the hospital on Saturday morning, where Limberg saw him. According to plaintiff, Limberg was short-tempered and sent her and Nathaniel home. Plaintiff, believing that Nathaniel was dying, took the baby to the hospital on Saturday or Sunday evening. Limberg arrived shortly thereafter, examined Nathaniel, and took a blood count and spinal tap. The spinal fluid was cloudy, indicating meningitis. Nathaniel was then immediately transferred to the care of Dr. Freestone at Utah Valley Hospital. Nathaniel was comatose for his first seven days at Utah Valley Hospital. After three weeks he was released for a few days, but was readmitted and remained hospitalized for three to three and one-half months.
 
 
 5
 Nathaniel has been diagnosed as presently having developmental delays, speech and language delays, a hearing impediment, sensory and neural loss on the left side of his body, a discrepancy in leg length due to improper muscle growth on his left side, and some mental retardation. Plaintiff alleges that these conditions are all attributable to the meningitis.
 
 
 6
 Plaintiff brought this diversity suit in federal court in Utah individually and as guardian ad litem of Nathaniel on February 16, 1983. 28 U.S.C. Sec. 1332. She alleged medical malpractice based on a failure to properly diagnose meningitis. Limberg moved for dismissal, contending that the suit was barred by the statute of limitations. The trial court treated the motion for dismissal as a summary judgment motion and dismissed the action, 598 F.Supp. 152. Plaintiff filed a timely appeal with this court. 28 U.S.C. Sec. 2107.
 
 
 7
 Because this is a diversity suit, we apply the relevant Utah statute of limitations, Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 1469-70, 89 L.Ed. 2079 (1945), as well as the applicable Utah tolling provisions. Cook v. G.D. Searle & Co., Inc., 759 F.2d 800, 802-03 (10th Cir.1985). In this case, the relevant statute of limitations is found in the Utah Health Care Malpractice Act, Utah Code Ann. Secs. 78-14-1 to 78-14-16 (1986 Supp.), which was passed in 1976 as a response to the rising number of medical malpractice claims and the resultant increase in health care costs and reduction in health care services. The limitation provision of the Malpractice Act provides in relevant part:
 
 
 8
 (1) No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence....
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 (2) The provisions of this section shall apply to all persons, regardless of minority or other legal disability under section 78-12-36 or any other provision of the law, and shall apply retroactively to all persons ... and to all health care providers and to all malpractice actions against health care providers based upon alleged personal injuries which occurred prior to the effective date of this act; provided, however, that any action which under former law could have been commenced after the effective date of this act may be commenced only within the unelapsed portion of time allowed under former law; but any action which under former law could have been commenced more than four years after the effective date of this act may be commenced only within four years after the effective date of this act.
 
 
 12
 Utah Code Ann. Sec. 78-14-4 (1986 Supp.). This amended version of Sec. 78-14-4 expressly refers to the Utah general tolling statute, Utah Code Ann. Sec. 78-12-36 (1986 Supp.).[1]
 
 
 13
 The following chronology of events will aid in the analysis of this case:
 
 
 14
 April 1, 1976--The Utah Health Care Malpractice Act, as originally enacted, becomes effective;
 
 
 15
 August 16, 1977--The Utah Supreme Court renders its decision in Scott v. School Board of Granite School District, 568 P.2d 746 (Utah 1977);
 
 
 16
 February, 1979--The events giving rise to the malpractice claim in this case occur;
 
 
 17
 May 8, 1979--The amendment to Sec. 78-14-4 becomes effective;
 
 
 18
 February 16, 1983--Plaintiff files the malpractice claim in federal district court.
 
 
 19
 When the Malpractice Act was originally enacted in 1976, Sec. 78-14-4 did not include the phrase "under section 78-12-36 or any other provision of the law." In 1977, the Utah Supreme Court rendered its decision in Scott v. School Board of Granite School District, 568 P.2d 746 (Utah 1977). In Scott, the court held that the limitation period on all claims of minors was to be tolled until the majority of the claimant. At the time of the alleged injuries to Nathaniel in February, 1979, the Scott rule tolled the provisions of Sec. 78-14-4 until Nathaniel reached majority. The legislature amended Sec. 78-14-4 in May, 1979, with the intent of overturning the effect of Scott in the malpractice area. The amendment added the reference to Sec. 78-12-36 in order to expressly include minors' claims within the limitation provision of Sec. 78-14-4.
 
 
 20
 Assuming that the amendment precludes the application of the Scott rule in medical malpractice claims, minors may no longer invoke the benefits of Sec. 78-12-36. Although the alleged injuries to Nathaniel occurred prior to the passage of the amendment to Sec. 78-14-4, plaintiff filed her malpractice claim in February, 1983, after the amendment to Sec. 78-14-4 became effective. Appellees thus contend that the limitation provisions of the statute bar the filing of plaintiff's claim. Plaintiff asserts that the amended version of Sec. 78-14-4 should not apply to this injury which occurred prior to the effective date of the amendment. Alternatively, plaintiff contends that even if the amendment is applied in this case, the saving provision of Sec. 78-14-4(2) allows the filing of the claim.
 
 
 21
 The Utah Supreme Court rendered its decision in Scott in 1977, subsequent to the passing of the original Malpractice Act. Plaintiff contends that the Scott decision required the application of the general tolling provisions in all minors' claims, including medical malpractice claims. Appellees, on the other hand, assert that Scott should not be read so broadly, and that its application should be limited to the particular facts of Scott involving the Utah Governmental Immunity Act.
 
 
 22
 The Scott decision dealt with the Utah Governmental Immunity Act, and therefore did not specifically address the limitation provision of the Malpractice Act. Nevertheless, the Utah court unequivocally stated that "a minor claimant is justly entitled to the protection afforded by said Section 78-12-36(1), U.C.A., 1953, in all cases, including notice requirements of the type contained in the Utah Governmental Immunity Act. To hold otherwise is a denial of due process and equal protection." Scott, 568 P.2d at 748 (emphasis added). The Utah court based its ruling on the "abundantly clear" general legislative intent to protect the claims of minors. Id.
 
 
 23
 In Scott, the court noted that its previous decisions had held that the various specific statutes of limitation took precedence over the general tolling statute, but that the general tolling provisions would now apply in all cases involving minors "[n]otwithstanding the prior pronouncements of this court." Scott, 568 P.2d at 747-48. Also, the language in Scott providing that Sec. 78-12-36(1) applied "in all cases, including notice requirements of the type contained in the Utah Governmental Immunity Act" indicates that the court intended its holding to have application beyond the facts present in Scott.[2] Scott, 568 P.2d at 748 (emphasis added). The Utah court could have narrowed its holding or carved out specific exceptions to the broad application of the tolling provision, yet it chose not to do so. Thus, pursuant to Scott, the general tolling provisions of Sec. 78-12-36 would apply to all claims of minors, including medical malpractice claims, and the limitation provisions of Sec. 78-14-4 would be tolled until Nathaniel reached majority.
 
 
 24
 The Utah Legislature apparently recognized the possibility that Scott would allow the tolling of Sec. 78-14-4 until the majority of the minor claimant, and endeavored to preclude such an application of Scott. In 1979, the legislature amended Sec. 78-14-4 to include the phrase "under section 78-12-36 or any other provision of the law" in order to include minors' claims in the limitation provisions of Sec. 78-14-4. The express purpose of the amendment was "to overturn a Supreme Court decision which has recently come down." Representative Judd,[3] Transcript of Discussion and Vote in Utah House of Representatives at Third Reading of H.B. 164 (Feb. 13, 1979). Both parties concede that the Supreme Court decision referred to above is the Scott decision. (Appellant's brief at 19, Appellees' brief at 17). The 1979 amendment was passed by the Utah Legislature during the session which adjourned March 8, 1979. Because Utah acts take effect 60 days after adjournment of a session, the 1979 amendment became effective on May 8, 1979. Utah Const., Art. VI, Sec. 25. See also Utah Code Ann., Parallel Tables Volume, pp. 80, 85 (1986 Supp.).
 
 
 25
 The appellees claim that this amendment precludes the possibility of tolling and is to be applied retroactively, thus barring plaintiff's claim. Even if we assume that the amendment does effectively preclude the application of Sec. 78-12-36 to medical malpractice claims and that it may be applied to plaintiff's claim, Sec. 78-14-4 does not operate to bar this action.
 
 
 26
 Utah law generally calls for the application of the law which is in effect as of the date of the filing of the original complaint. Archer v. Utah State Land Board, 15 Utah 2d 321, 392 P.2d 622, 624 (1964). See also Marshall v. Industrial Commission of State of Utah, 704 P.2d 581, 582 (Utah 1985). Section 78-14-4, as amended, was in effect at the date of filing and, therefore, we apply it to this action. However, even when we apply Sec. 78-14-4, as amended, to the occurrences which form the basis of this case, it does not bar plaintiff's claim. The saving clause in Sec. 78-14-4(2) allows a claimant whose claim has accrued prior to the effective date of the Act to commence his suit within the time remaining under the limitation period that was applicable to such claimant before the Malpractice Act became effective. These accrued claims must be commenced no later than four years from the effective date of the Act.
 
 
 27
 Appellees argue that the effective date of the Act is April 1, 1976, and that the saving provision of Sec. 78-14-4(2) only allows the commencement of accrued actions through April 1, 1980. Appellees also contend that the substance and effect of the 1979 amendment should relate back to the effective date of the original Act, with no break in continuity between the enactment date of the original Act and the amendment. To accept this argument would be to ignore the effect of the Scott ruling subsequent to the passing of the original Act, as well as the established limitations on the power of the legislature.
 
 
 28
 As noted above, the Scott decision permitted the tolling of the limitation period for a minor's cause of action until that minor reached the age of majority. The Scott rule applied to all claims involving minors, including medical malpractice claims, at least until the legislature amended the Malpractice Act in 1979. Thus, prior to the 1979 amendment, Utah law required the tolling of the limitation period set forth in Sec. 78-14-4 until the minor claimant reached majority.
 
 
 29
 The 1979 amendment is a legislative attempt to overturn the Scott decision, and, assuming the amendment successfully achieved that purpose, constitutes a clear change in Utah law. While Utah law, under appropriate circumstances, will allow the enactment of a statute that "has a reasonable retrospective application upon matters or actions prior to its enactment or prior to [the legislature's] convening," it will not allow the legislature to "pass an act which would become a law prior to the date it was duly convened." Mecham v. State Tax Commission, 17 Utah 2d 321, 410 P.2d 1008, 1009 (1966) (holding that the effective date of an amendment to the Utah income tax statutes was 60 days after the adjournment of the legislature, or May 11, 1965, although the act had retroactive effect back to January 1, 1965).
 
 
 30
 To allow the effective date of the amended version of Sec. 78-14-4 to relate back to the original Act's effective date of April 1, 1976, as appellees urge, would allow the enactment of a law prior to the date the legislature convened to consider the law, and is forbidden by Mecham. Such a construction would also completely ignore the intervening existence of the Scott decision as the compelling reason behind the 1979 amendment. Thus, the change in Utah law did not become effective until the enactment of the 1979 amendment, and to the extent Sec. 78-14-4, as amended, overturns Scott and prevents the application of the general tolling provisions of Sec. 78-12-36, the effective date of the Act is May 8, 1979.
 
 
 31
 Applying this effective date of May 8, 1979, to the saving clause in Sec. 78-14-4(2), it becomes clear that this case constitutes a malpractice action "based upon alleged personal injuries which occurred prior to the effective date of this act." Furthermore, under "former law," or the law in effect prior to the effective date of the Act (in this case Scott ), plaintiff's claim could have been commenced after Nathaniel reached majority, well after the effective date of the Act. Pursuant to Sec. 78-14-4(2), plaintiff is given the unelapsed portion of the time allowed under Scott to bring the claim. However, since this unelapsed portion of time would allow plaintiff to bring the claim more than four years after the effective date of the Act, plaintiff is given up to four years from the effective date to commence the action. Thus, plaintiff had until May 8, 1983, to file the malpractice suit. The original complaint was filed February 16, 1983, and therefore is not barred by the statute of limitations.
 
 
 32
 In summary, we hold the Scott rule tolled plaintiff's claim, at least until the 1979 amendment became effective, and, subsequent to the enactment of the amendment, the saving clause of Sec. 78-14-4 allowed the filing of plaintiff's claim. This determination renders moot the issues as to when plaintiff actually discovered the injury and whether the mother's failure to bring a timely claim should also bar the child from filing suit. Furthermore, we express no opinion as to whether the 1979 amendment did in fact successfully overturn Scott, whether the amendment may properly be given retroactive effect, or whether the limitation statute violates the United States and Utah constitutions.
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 [1]
 Section 78-12-36 provides in pertinent part:
 If a person entitled to bring an action, other than for the recovery of real property, is at the time the cause of action accrued, either:
 (1) Under the age of majority; ...
 * * *
 The time of such disability is not a part of the time limited for the commencement of the action.
 
 
 [2]
 The Utah court has in fact expressly used the reasoning of Scott to toll the statute of limitations in an area wholly separate from the Governmental Immunity Act; the area of paternity and child support actions under the Utah Uniform Paternity Act. See Szarak v. Sandoval, 636 P.2d 1082, 1084 (Utah 1981)
 
 
 [3]
 Representative Judd also stated:
 However, as with any good law, sometimes it needs to be interpreted by the Court before you really know whether or not you have done what you have wanted to do and so the original bill has now been interpreted by the Court and its impact has been felt in another area of the law. And as a result of that, we come to you now with the amendment which suggests that, despite what it says in [78-14-4] it does not impact [78-12-36] which is another area of the statute of limitations, and so we are making that change in order to overturn a Supreme Court decision which has recently come down.