374 P.2d 516

Mary Amelia WOOD, Hazel Stevens, Lloyd Warner, Guardian Ad Litem for Nancy Louise Ovard, Wayne John Sterling and Dean J. Hadfield, Plaintiffs and Respondents,

v.

Walter L. BUDGE, Attorney General of Utah, Defendant and Appellant.

No. 9541.

Supreme Court of Utah.

Sept. 5, 1962.

A. Pratt Kesler, Atty. Gen., Louis H. Callister, Jr., Asst. Atty. Gen., Salt Lake City, for appellant.

C. N. Ottosen, Edward F. Richards, Quentin L. R. Alston, John L. Black, J. Lambert Gibson, Salt Lake City, for respondents.

CROCKETT, Justice.

The Attorney General appeals from an order of the District Court of Salt Lake County directing payment of certain sums

appropriated by the 1961 Legislature to satisfy claims of the plaintiffs.

The claims are of various kinds, but have these things in common: Each is asserted to be a claim against the State, which it is contended would provide a basis for a cause of action, except for the doctrine of sovereign immunity;[1] each was presented to the Board of Examiners as permitted by law;[2] that Board reviewed each and transmitted it to the Legislature with the recommendation that it be denied; and the Legislature did not follow the recommendation, but approved the claim and appropriated the funds to the Attorney General with which to pay it.[3]

Upon subsequent presentation of the claims to the Attorney General he withheld payment, stating that, "There is much uncertainty as to the law covering this subject matter. It is my opinion that no claim should be paid * * * until the law pertaining thereto is clarified by court determination."

The reason assigned for doubt as to the propriety of the appropriations for these claims was set forth in his answer that he was without " * * * authority to pay the claims of the plaintiff in view of the fact that Article VII, Section 13, of the Utah Constitution vests final authority in the Board of Examiners to pass upon all claims against the State of Utah, and the Board of Examiners has denied plaintiffs' claims."

The questioning of the Legislature's prerogative in approving and appropriating money for claims which have been denied by the Board of Examiners makes it advisable to discuss briefly the source and extent of the authority of the latter Board. It is created by Section 13, Article VII, just referred to, to consist of the governor, secretary of state and attorney general, " * * * with power to examine all claims against the State * * * and no claim * * * shall be passed upon by the Legislature without having been considered and acted upon by the said Board of Examiners." [4]

■ We are in accord with the defendant's assertion that the constitutional grant of authority "to examine all claims against the State" gives the Board something more than an auditing duty to perform; and that within its proper prerogative it has extensive power and discretion in examining into and determining the merits of claims asserted against the State. We so observed in the recent case of Bateman v. Board of Examiners,[5] after quite thoroughly consider-

1. See State Road Commission v. Parker, 13 Utah 2d 65, 368 P.2d 585.
2. Utah Constitution, Art. VII, Sec. 13, and 63–6–10, U.C.A.1953.
3. Laws of Utah 1961, Chapter 185.
4. Implemented into statute by Sec. 63–6–1, U.C.A.1953.
5. 7 Utah 2d 221, 322 P.2d 381.

ing the problem and our cases which have dealt with it. But we also stated:

> " * * * Certain it is that *one of the functions of Examiners is to investigate and act as a fact finder and advisor to the legislature on claims of that nature,* such as tort claims, or other claims for damages or compensation claimed for property, goods or services, by persons who would not otherwise have legal redress available." (Emphasis added.)

The provision of Sec. 13 of Art. VII, quoted above, that, " * · * * no claim * * * shall be passed upon by the Legislature without having been considered and acted upon by the said Board of Examiners" plainly indicates that the action of the Board was not intended to be so final and absolute as to preclude other action by the Legislature. We can perceive no other meaning than that after the Board has performed its duty of examining and acting upon such claims, the Legislature may then "pass upon," i. e., exercise its judgment, on them and take such action as it deems appropriate. Entirely in harmony with this

conclusion are: our statutory provision that "any person who is aggrieved by disapproval of such a claim by the Board [Examiners] may appeal therefrom to the legislature";[6] the prior decisions of this court that have touched upon the matter;[7] and the practice which has been followed since statehood.[8] To decide otherwise would produce the illogical result of turning the subsequent presentation of claims to the Legislature into an empty gesture whose only purpose would be to rubber-stamp the action of the Board.

It is also pertinent to observe that if one of the executive officers constituting the Board could circumvent legislative action by refusing to pay out funds appropriated to pay such a claim, problems would arise in determining how far actions of that character could extend; and may well result in perplexities relating to the balance of power between the executive, legislative and judicial branches of our state government. These departments, though to a degree interrelated and cooperating in the overall functions of government, have separate powers which should be safeguarded

---

6. Sec. 63–6–17, U.C.A.1953: "Any person * * * aggrieved by the disapproval of a claim by the board [Examiners] may appeal from its decision to the legislature by filing with the board a notice thereof, and * * * the board must transmit the demand * * * with a statement of the evidence taken before it, to the legislature."

7. See Bateman v. Board of Examiners, footnote 5, supra; also Hjorth v. Whit-

tenburg, 121 Utah 324, 241 P.2d 907; Campbell Bldg. Co. v. State Road Comm'n., 95 Utah 242, 70 P.2d 857; Wilkinson v. State, 42 Utah 483, 134 P. 626.

8. Claims have been presented through the Board of Examiners to the Legislature at every biennial session thereof since statehood. See Chap. 185, Laws of Utah 1961 and prior appropriation acts in each biennial volume of Utah Session Laws.

in order to preserve this balance which has always been recognized to be one of the advantages of our system. In case of doubt or uncertainty on a problem such as here exists, we think it wise and desirable to adopt an interpretation of the law and to follow a policy which will fit harmoniously into and sustain that balance rather than to choose an alternative which would provide a foundation for disrupting it.

■ There is another principle which bears upon the question here under consideration. Our Legislature is directly representative of the people of the sovereign state, and thus has inherently all of the powers of government except as otherwise specified by the State Constitution. By way of comparison, it is significantly different in that respect from the federal government, which is a government of limited powers that can properly do only those things within the scope of the powers expressly granted to it by the states through the Federal Constitution;[9] whereas, the State Legislature, having the residuum of governmental power, does not look to the State Constitution for the grant of its powers, but that Constitution only sets forth the limitations on its authority. Therefore, it can do any act or perform any function of government not specifically prohibited by the State Constitution. In order to justify a conclusion that the power to approve and pay such claims has been taken away from the Legislature and placed exclusively within the control of the Board of Examiners, it would have to clearly so appear, which is not the case here.

■ The Attorney General has also suggested that the appropriation to pay these claims may be outside the bounds of constitutional propriety as gifts of public funds to private individuals. It is an elementary principle of justice that there should be "equal rights to all and special privileges to none."[10] And that thus there should be no discrimination against nor favoritism toward some persons over others. It is quite unthinkable that the Legislature could properly make gifts of public funds merely to confer favors on certain individuals, or to appease self-seeking persons, who make pretended but groundless claims against the State.[11] In order to justify approval and payment there must be at least some semblance of a valid claim; or some relationship to the public interest or welfare, on the basis of which some responsibility on behalf of the State could properly rest.

9. Amendment X, U. S. Constitution.

10. Cf. closely similar statement made by Thomas Jefferson, First Inaugural Address.

11. Utah Constitution, Art. VI, Sec. 26 (16). The legislature is prohibited from enacting any private or special laws in the following cases: Granting to an individual, association, or corporation any privilege, immunity or franchise.

Although the privilege is not ours to pass upon the wisdom of legislative action, we think it not amiss to point out that due to the extent of its powers as to such claims, the Legislature should regard its responsibility as correspondingly grave; and should bear in mind these facts: That the duty of examining into claims against the State was undoubtedly given to the Board of Examiners because the officers comprising it can be assumed to be acquainted with the fiscal affairs of the State and to have a high sense of responsibility therefor; that the Board has better facilities at its command for investigation and inquiry into such matters than has the Legislature, including the fact that the Attorney General as the State's legal advisor was made a member of the Board purposely so that he and his staff could be of help in determining whether an asserted "claim" against the State has any valid foundation, or whether it is simply a request for a gift or some other meritless attempt to obtain public funds, masquerading under the guise of such a "claim."

For these reasons it is unquestionable that this function of the Board of Examiners was intended to be regarded as an important one; and that it is the legislative duty to give serious consideration to its recommendations to the end that such claims be acted upon with prudence and wisdom to best serve the interests of the whole State and to avoid making grants in cases where the State should assume no responsibility.

In the instant case there was no trial of the issues as to the merits or frailties of these claims, and there is no record before us of any proceeding on them. The complaint stated, and the answer admitted, facts which, if true, would show that they are claims against the State which were filed and proceedings taken in accordance with law. We are obliged to apply the principle that legislative actions are endowed with a presumption of validity; and that they will not be stricken down unless it clearly appears that the Legislature acted beyond its authority.[12] Upon our survey of the record before us in that light, we have concluded that there is no showing that approving and providing compensation for these claims transgressed the legislative prerogative.

Affirmed. No costs awarded.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (concurring in result).

The record in this case reflects a simple writ of mandate problem, which poses a question as to whether the Attorney General should be ordered to pay over funds

12. See State v. Geurts, 11 Utah 2d 345 359 P.2d 12, and cases therein cited.

appropriated to pay certain so-called "claims" against the State. *No one questioned the merits of any of the claims.* The pleadings on both sides *assumed* that the "claims" were legitimate, except for the doctrine of sovereign immunity. Had anyone questioned the merits of these petitions for compensation, this writer seriously doubts whether any of them judicially could have been declared legitimate claims against the State. It is my opinion that had there been such an attack, no court could have arrived at the conclusion that they were anything but requests for gifts of taxpayers' money. One, for example, obviously was not a claim against the State, but was a claim against a county. Another was a claim for injuries to a boy while riding a bicycle on the sidewalk, and who fell against a cement abutment when weeds caught in his wheels. The Legislature appropriated $1,700 of a $4,666 claim for injuries, presumably to the boy's face, but which was made up of the following items: Medical bills $66.00, *future medical bills,* $600, disfiguration, *humiliation and embarrassment,* $2,000, *pain and suffering, both mental and physical,* $2,000. All this without benefit of judicial review or determination of the facts, and so far as this record is concerned, quite divorced from any protection afforded by an orderly judicial proceeding and normal cross-examination, as is pointed out in the main opinion. It would appear to this writer that these two "claims" are simply tagged as "claims," when in reality they are simply requests for *gifts* of taxpayers' money. It might be suggested that the public should be afforded minimum rights of due process as well as the individual. I point these things out, since I am convinced this case should be decided on *procedural* grounds, no one having attacked the merit of the "claims" and to suggest that the gratuitous and unnecessary language of the main opinion that "in order to justify approval and payment there must be at least some semblance of a valid claim or some relationship to the public interest or welfare on the basis of which some responsibility on behalf of the State could properly rest" hardly could be applicable to the appropriations made in this case. Any language in the main opinion concerning the merits of claims and the Legislature's function with respect to processing them, including the unthinkability that it would make gifts, are not before us, but such language might imply, without pleading or proof, that the Legislature made no unwarranted appropriations here, and that the "claims" were real, legitimate and meritorious claims. I am convinced we should stick to the pleadings here and to the natural and necessary presumptions that flow therefrom, so far as the case is to be reviewed by us strictly on what is before us,—not what we think the Legislature thought or anything else dehors this record. *This case in no way involves the question*

*whether the petitions for compensation were "claims" or requests for "gifts," in the legal sense, so why even talk about it?*

The petition alleged a filing of the claims with the Board in compliance with provisions of Art. VII, Sec. 13, Utah Constitution; that the Board considered and transmitted them to the Legislature with a recommendation that they be denied; that the Legislature approved them and appropriated moneys for their payment; that the law enjoined the Attorney General to pay the same upon obtaining releases, but that this official has refused to do it, thus exceeding *his* authority as Attorney General. There was no assertion or pleading that attacked the processing of the claims, and there were no constitutional issues raised incident to the pleaded facts and the answer thereto. The only question was whether, under existing legislation, and the procedure taken, the Attorney General should be required to pay. Constitutional issues anent the nature and extent of powers between two constitutional agencies, the Legislature and the Board, orally were interjected into this case after issue joined, hearing on the petition, and issuance of the writ of mandate.

It is axiomatic that constitutional law questions will not be convassed or adjudicated which are not made an issue by the pleadings and which are not reflected in any segment of the record. None was issuable here. None of the provisions of Title 63, U.C.A.1953, having to do with the nature

and extent of the functions of the Board of Examiners, was attacked as unconstitutional. Nor was any function of the Legislature questioned. None was briefed or argued in reference to the present appeal.

The petition stated facts which, if true, would show regularity in the filing and processing of the claims. No attack having been made urging irregularity, there is nothing this court can do but presume regularity. A further presumption must be indulged in this court to the effect that, without meritorious attack on the Legislature's disposition of the matter, its action was regular, consonant with and within the ambit of its authority. Therefore, there is nothing left but for this court to ignore any constitutional straw man set up, on matters dehors the record, arguments for or objections to which are rhetorical and interesting but inapropos. It follows that the trial court must be affirmed and the Attorney General must pay the claims from moneys appropriated to him for that purpose, upon obtaining the releases mentioned in the pleadings and the legislation.

Mandamus is rarely employed, and not designed to referee internecine conflicts between constitutional agencies of the State, without profound or serious reason. Generally, it is dedicated to the proposition that an official, failing to carry out a requirement imposed by law, must comply. That is all that the pleadings in this case ask, and from the record before us, and

indulging the presumptions mentioned, there seems to be no escape from the conclusion that *in this particular case* the Attorney General should make delivery of the moneys appropriated.

As pointed out in the main opinion, the Legislature cannot make gifts unrelated to any real public purpose simply because an isolated individual is in need, is injured, or because an end result morally might be charitable and commendable. The public weal may justify assistance generally where the public generally is concerned and benefited, but a gift of public moneys simply because a written plea is advanced, labeled a "claim" against the State, historically and traditionally has been denounced.[1]

It seems obvious to this writer that the Board of Examiners was a creature of its constitutional parents, who deliberately and with wisdom designed it to include the highest elected legal officer of the State. Also obvious, it seems, is that such officer was made a member of the Board to determine if a so-called "claim" really is one against the State, or whether it simply is a request for a gift inaccurately called a "claim," or some other illegitimate petition for funds.

Furthermore, the decision of the Board, after it has "passed upon" a "claim" should be overridden by the Legislature only upon a clear showing that its action wholly was arbitrary and capricious. Any arbitrary and capricious action of either the Board or the Legislature itself in effectuating any action beyond its recognized functions would be subject to judicial review in an appropriate proceeding. All this,—and each case must stand alone,—to assure the citizen and taxpayer whose funds are held in trust for governmental purposes, will not be spoliated or denied of access, depending on the law and justice demonstrated in each individual case. To hold otherwise, the judiciary would be impotent in protecting the fundamental rights of those who embrace our tripartite system, and would render one branch helpless to close any Pandora's Box through which could flow "claims" that appeared legitimate on their faces, but which under the test of probative judicial machinery and the application of simple principles of due process, would be unmasked and shown to be false.

It may be suggested that in a case where processing a claim through the Board of Examiners on to the Legislature has not been accomplished substantially in compliance with statutory interdictions, or where the so-called "claim" proves abortive, the action of the Legislature in appropriating money to satisfy such "claim" would be subject to examination by the Judiciary with respect to merit and justiciability,—a duty this court must accept, and

1. 42 Am.Jur. 756, Sec. 57, Public Funds.

which it has borne many times in determining the validity of legislation and its results. Included therein is the onus of determining whether an appropriation has or has not met constitutional requirements, and any proper implementation thereof.

Much of this concurring opinion is gratuitous, since I think the case decidable strictly on procedural grounds, but I feel justified in indulging in it in the light of the fact that I think much of the main opinion is gratuitous, and I feel free, therefore, to address myself thereto.