393 P.2d 795

**Lamont F. TORONTO, Plaintiff and Respondent,**

v.

**George D. CLYDE, A. Pratt Kesler, Clair R. Hopkins and The State of Utah, Defendants and Appellants.**

**No. 10069.**

Supreme Court of Utah.

July 6, 1964.

A. Pratt Kesler, Atty. Gen., Richard L. Dewsnup, Asst. Atty. Gen., Salt Lake City, for appellant.

James B. Lee, H. R. Waldo, Jr., Salt Lake City, for respondents.

CROCKETT, Justice.

The plaintiff Secretary of State brought this action for a declaratory judgment to test the constitutionality of the State Finance Act, Chapter 148, S.L.U.1963 (now cited as Secs. 63–2–13, 63–2–15 and 63–2–20, U.C.A.1953).

This Act is purposed to vest in the Governor, and the newly created office of Director of Finance, powers theretofore regarded as vested in the Board of Examiners by the Constitution.[1] From a judgment of the district court declaring certain portions of the new Act unconstitutional, defendants appeal.

---

1. Sec. 13, Art. VII, Utah Constitution.

There is no dispute in the facts. They were stipulated by the parties and appear to be "tailor-made" to test the validity of the provisions in question which will be discussed below. The Act went into effect on July 1, 1963, and on that day Governor George D. Clyde appointed Clair R. Hopkins to the new position of Director of Finance and set his salary at $14,520 per year. The new Director takes the position that his salary claim for the first pay period of that fiscal year, July 1, 1963, through July 15, 1963, and the payroll for the state employees for that period, did not require the approval of the Board of Examiners; but that under the provisions of the new Act the salary claim and payroll required only the approval of the Governor and of the Director of Finance.

Prior to the advent of the new Finance Act, when a state department requested a disbursement of funds, it was submitted to the Department of Finance.[2] That department passed on the request only as to availability of funds appropriated to the requesting department, and so certified to the Board of Examiners, which approved or disapproved the same. Under the new 1963 Act, Finance has assumed both the prerogative and the duty of determining not only of the availability of funds, but also of passing on the propriety of the expenditures.

The defendant's contention that it is no longer necessary to present to Examiners requests for the setting or the payment of salaries raises the central issue in the case: whether the powers given to and exercised by the Director of Finance and the Governor under the new Finance Act cut into the powers conferred upon the Board of Examiners by Sec. 13, Article VII, of our Constitution, which provides:

"Until otherwise provided by law, the *Governor, Secretary of State and Attorney-General* shall constitute a Board of State Prison Commissioners, which Board shall have supervision of all matters connected with the State Prison as may be provided by law. *They shall, also, constitute a Board of Examiners, with power to examine all claims against the State* except salaries or compensation of officers fixed by law, *and perform such other duties as may be prescribed by law;* and no claim against the State, except for salaries and compensation of officers fixed by law, shall be passed upon by the Legislature without having been considered and acted upon by the said Board of Examiners."

The extent of the power conferred upon Examiners by the language, " * * * with power to examine all claims against the State * * *," has been before this court

---

2. The Department of Finance was created by Ch. 10, S.L.U.1941 (First Special Session).

on a number of occasions since statehood.[3] In the case of Bateman v. Board of Examiners,[4] we gave extensive consideration of this problem and reviewed the Utah decisions dealing with it. Upon the basis of the constitutional language, its background and history, including the decisional law of our state, we concluded that the framers intended to vest in the constitutional officers—the governor, the secretary of state and the attorney general, who are elected by and are thus directly responsible to the people—more than a mere auditing function, that is, power to examine into the advisability and necessity of any disbursement or proposed obligation of the state; and that this has the effect of giving Examiners general supervisory power over expenditures by the state government.[5]

The first section of the 1963 Finance Act challenged as conferring upon the Director of Finance and/or the Governor powers belonging to the Board of Examiners is Section 13 (now cited as Section 63–2–13, U.C. A.1953).

*"The director of finance shall prescribe and fix a schedule of salaries* for the officers, clerks, stenographers and employees of all state offices, departments, boards and commissions, except where such salaries are fixed by statute, \* \* \*. The director of finance must in all cases give certification as to the availability of funds to pay salaries. *The board of examiners in conducting any examination of claims shall not have authority to fix, reset or arbitrarily refuse to pay salaries set by the director of finance or officers' salaries as determined by agency governing boards. Such schedule of salaries shall have the force of law* in all state offices, departments, boards and commissions, and shall in no case be exceeded without the express approval of the director of finance. *No salary schedule shall be put into effect until approved by the governor."*

In attempting to justify the constitutionality of this statute, defendants argue that there is no basis in the language of Sec. 13, Art. VII of the Constitution to warrant a conclusion that the Board of Examiners may set or pass on salaries. This power is necessarily included within the general supervisory power over expenditures of state government heretofore adjudicated to be in Examiners.

---

3. See Thoreson v. State Board of Examiners, 19 Utah 18, 57 P. 175, aff'd. on rehearing, 21 Utah 187, 60 P. 982; Marioneaux v. Cutler, 32 Utah 475, 91 P. 355; State ex rel. Davis v. Edwards, 33 Utah 243, 93 P. 720; Uintah State Bank v. Ajax, 77 Utah 455, 297 P. 434; State Board of Education v. Comm. of Finance, 122 Utah 164, 247 P.2d 435;

University of Utah v. Board of Examiners, 4 Utah 2d 408, 295 P.2d 348; Bateman v. Board of Examiners, 7 Utah 2d 221, 322 P.2d 381; Wood v. Budge, 13 Utah 2d 359, 374 P.2d 516.

4. 7 Utah 2d 221, 322 P.2d 381.

5. See also Wood v. Budge, 13 Utah 2d 359, 374 P.2d 516.

■ Authorizing the Director of Finance to fix a schedule of salaries is constitutionally innocuous and undoubtedly salutary. But this is coupled with the provisions that such a schedule "of salaries shall have the force of law * * * and shall in no case be exceeded without the express approval of the director of finance" and that " * * * No salary schedule shall be put into effect until approved by the governor." It is plain to be seen that these provisions would give the power of final approval or disapproval over the payment of salaries to the Director of Finance and/or the Governor. This would make the submission of salary requests to the Examiners but a meaningless gesture and would effectively remove from them the control over state finances given them by the Constitution. This conclusion is re-enforced by the restriction in the statute that Examiners "shall not have authority to fix * * * salaries set by the director of finance or * * * by agency governing boards."

Essentially the same situation exists with respect to Section 63–2–15 of the new 1963 Finance Act. It purports to confer upon the same officials, the Governor and Director of Finance, control over mileage and travel expenses:

*"The director of finance shall establish mileage and travel expense schedules and set up rules and regulations for travel of all state officers, employees and part-time officials; and*

*such schedules shall have the force of law * * * no voucher for travel expense shall be paid until the same has been approved by the director. No obligation shall be incurred for travel* outside of the state *without the advance approval of the governor through the director of finance."*

It will be seen that inasmuch as no claim could be incurred for travel outside of the state without the advance approval of the Governor through the Director, nor could any claim for travel be paid until it had been approved by the Director, those officials would have final and complete control over such expenditures. Thus this section would also cut into the constitutional power of the Board of Examiners.

Difficulty of the same character exists with respect to Section 63–2–20 of the new Act, which deals with giving the Governor and/or the Director of Finance general budgetary control over all state departments and institutions. The pertinent portions are:

"The director of finance shall exercise budgetary control over all state departments, institutions and agencies. * * * The director shall examine and approve or disapprove all requisitions and requests for proposed expenditures of the several departments, except salaries or compensation of officers fixed by law in which case the director shall certify only the availability of funds,

and *no requisition of any of the departments shall be allowed nor shall any obligation be created without the approval and the certification of the director.* \* \* \* It is the intent of the legislature that the department of finance shall examine and pass upon all proposed expenditures. *Any examination of claims* as may be conducted *by the board of examiners shall be made* prior to payment but *only after the obligation has been incurred* and an account has been submitted and audited by the state's accounting officer."

The prohibition that "no requisitions of any of the departments shall be allowed nor shall any obligation be created without the approval and certification of the director" would permit that official to effectively control all budgetary matters of state departments and agencies. That this was intended is borne out by the provision that, "It is the intent of the legislature that the department of finance shall examine *and pass upon* all proposed expenditures." The phrase, "and pass upon," applied meaningfully in the context of the Act, could only indicate that the Director could approve or disapprove any proposal. This conclusion is further supported by the final sentence of the section, which would expressly restrict the Board of Examiners:

"\* \* \* Any examination of claims \* \* \* by the board of examiners *shall be made* prior to payment but *only after the obligation has been incurred* and an account has been submitted and audited by the state's accounting officer."

It is obvious that if the Examiners could not examine and pass upon expenditures before obligations were incurred, their function as to fiscal control would be greatly impaired, if not entirely destroyed.

As we have heretofore stated, from the endowment of Examiners with the "power to examine all claims" it is only reasonable to assume that it was intended that they should perform that duty.[6] However, as aptly observed by Judge Ellett, who tried this case below, "This does not preclude Examiners from establishing reasonable rules and procedures concerning its method of examining claims." This could include the Department of Finance or other agencies to determine facts and certify claims so long as under the procedure adopted the ultimate authority and the duty of passing upon claims remains with the Board of Examiners.

■ A further question posed by the parties prompts this observation: The three named officials functioning as a Board of Examiners are, of course, governed by majority vote, and any action taken requires the concurrence of two of the three members. And in a situation where one or more

6. See Wood v. Budge, 13 Utah 2d 359, 364, 374 P.2d 516, 519.

is absent and unable to vote, his subsequent vote upon his return is a valid and effective exercise of his duty and prerogative.

As is evident from the foregoing discussion, we are in agreement with the ruling of the trial court that certain portions of the new Finance Act are in conflict with the power vested in the Board of Examiners by the Constitution, and that insofar as they do so, in accordance with the observations made in this opinion, those statutes are of no effect. No costs awarded. (All emphasis added.)

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.