492 P.2d 1355

**Sherman J. PREECE, as State Auditor, Plaintiff and Respondent,**

v.

**Calvin L. RAMPTON, as Governor of the State of Utah, et al., Defendants and Appellants.**

No. 12439.

Supreme Court of Utah.

Jan. 17, 1972.

Rehearing Denied March 1, 1972.

See 494 P.2d 288.

---

Vernon B. Romney, Atty. Gen., Joseph P. McCarthy, Chief Asst. Atty. Gen., Salt Lake City, for appellants.

ELLETT, Justice: .

This is an appeal from the ruling in a declaratory judgment action which was brought to determine the constitutionality of Section 67–4–4, U.C.A.1953. This section removes from the state auditor the duty to

draw warrants upon the state treasurer and places it with the department of finance.

The trial court held that the section was unconstitutional in that it usurps the constitutional duties and prerogatives belonging to the state auditor.

The precise question was before this court in the case of Allen v. Rampton,[1] and we think that case is determinative of the instant matter.

The relevant section of the Constitution which was involved in the Allen case and in the present matter is Article VII, Section 17, which reads as follows:

The Auditor shall be Auditor of Public Accounts, and the Treasurer shall be the custodian of public moneys, and each shall perform such other duties as may be provided by law.

The cases cited in the Allen decision are to the effect that the duties being performed by the territorial treasurer and the territorial auditor at the time of the adoption of the Constitution are the duties which the Constitution imposed upon the state treasurer and the state auditor. The Allen case squarely holds that the duties of the state treasurer are those which were being performed by the territorial treasurer at the time of the adoption of the Utah Constitution.

While the Constitution provides that additional duties may be imposed upon these two officers, the language cannot be tortured into meaning that any of the duties and responsibilities which they had at the time can be diminished.

The duties of the territorial auditor were set out in Volume 1, C.L.U.1888, at page 251 as follows: "The auditor of public accounts shall examine and audit all public accounts connected with the pecuniary affairs of the Territory, . . .."

Volume 1, C.L.U.1888, at page 253 provides that the territorial auditor should procure a suitable seal of office and "impress said seal on all warrants, . . .."

The legislature enacted Chapter 17, Section 10, Laws of the Territory of Utah 1890, providing that the territorial treasurer pay out funds only on warrants issued by the territorial auditor.

The early case of Nelson v. Clayton, 2 Utah 299, was one wherein the warden of the territorial prison sought a writ of mandamus to compel the territorial auditor to draw a warrant for expenses lawfully incurred in connection with the management of the territorial prison. The trial court granted the writ, and the Supreme Court affirmed.

It thus clearly appears that the auditor at and prior to statehood drew all warrants upon the treasurer for the expenditure of money in the state. To take

1. 23 Utah 2d 336, 463 P.2d 7 (1969).

this duty away from the state auditor is to detract from the constitutional duties of his office, which cannot be done.

The actual typing of the warrants is ministerial in nature, and there is no basis for the auditor to complain if that work is done by the department of finance. However, the presenting of those warrants to the state treasurer calls for discretion, and the auditor should be the one to decide if a warrant is to be presented for payment. It was, and is, the duty of the state auditor to verify the correctness of accounts *before* they are paid.

Under the present statute the auditor as a practical matter is limited to a verification of the accounts of the various departments after the payments have been made by the state treasurer.

The department of finance is by statute [2] attached to the office of the governor and is created to assist him in his constitutional duties. One looks in vain in the Constitution to find where the governor needs any assistance in presenting warrants to the state treasurer. In fact, it is not now and never has been any concern of the governor to present warrants to the state treasurer or to determine if funds were available to pay them. These are functions of the office of the state auditor, and if the governor can't assume them, it seems that a commission established to assist him could not do so either.

The dissenting opinion relies on two cases which are distinguishable from the case now before us: Torres v. Grant [3] and Yelle v. Bishop.[4]

Torres v. Grant was decided under the Constitution of New Mexico, which provided, "Money [to be] paid upon warrant drawn by the proper officer," thus indicating that officers other than the auditor could draw warrants.

In Yelle v. Bishop the decision was proper, for the Constitution of Washington provided that "the Auditor shall have those duties prescribed by law."

In the recent case of Allen v. Rampton [5] we held that the constitutional duties of the state treasurer were those being performed by the territorial treasurer at the time of the adoption of the Constitution. In like manner we now hold that the constitutional duties of the state auditor are those which the territorial auditor was then performing and that the constitutional provision that other duties may be imposed upon him does not permit the legislature to relieve him of any of those constitutional duties.

The issue before us is very narrow and does not require us to hold unconstitutional the law which created the department of

2. Section 63–2–1, U.C.A.1953.

3. 63 N.M. 106, 314 P.2d 712 (N.Mex.1957).

4. 55 Wash.2d 286, 347 P.2d 1081 (Wash. 1959).

5. Footnote 1 above.

**60**

finance. What we do hold is that before the state treasurer can constitutionally pay a warrant, he must have the approval of the state auditor.

Long acquiescence by state auditors has permitted vouchers to be issued, some of which undoubtedly are outstanding. All such vouchers are valid and should be honored.

The judgment is affirmed. No costs are awarded.

CALLISTER, C. J., and HENRIOD, J., concur.

CROCKETT, Justice (dissenting).

I am unable to understand how the challenged statute in any way infringes upon the authority, or the prerogatives, or the duties of the state auditor as expressed in our state Constitution. And this is most especially so if it is considered in the light of established principles of constitutional law hereinafter set forth.

Such constitutional authority as the auditor has must derive entirely from Section 17 of Article VII:

The Auditor shall be *Auditor of Public Accounts,* and the Treasurer shall be

the custodian of public moneys, and each shall perform such other duties as may be provided by law.

In considering the attack upon the statute in question as being unconstitutional, the legislature of this state and the people whom they represent should be entitled to have that constitutional language interpreted and applied according to the plain and ordinary meaning of its terms and in harmony with well-established principles of statutory constructions which favor the validity of duly enacted statutes and oppose striking them down. These rules have come into being because courts quite generally are and have been deferent to the prerogatives of the other branches of government and realize that they should be reluctant to intrude into the legislative prerogative.

The most fundamental of such rules is that an enactment of the legislature is presumed to be constitutional and it should not be stricken down unless it is clearly and unequivocally in conflict with a constitutional provision.[1] Correlated to this, if there is any reasonable interpretation of the language of the questioned statute and the Constitution vis-a-vis each other, so that they can be reconciled without conflict, that interpretation and reconciliation should be adopted.[2]

1. Newcomb v. Ogden City Pub. School Teachers' Retirement Commission, 121 Utah 503, 243 P.2d 941 (1952); State v. Mason, 94 Utah 501, 78 P.2d 920 (1938).

2. Snow v. Keddington, 113 Utah 325, 195 P.2d 234.

To be considered in conjunction with the foregoing is the further principle of law which relates to the powers of the state legislature. The state government is one of original sovereignty, as contrasted, for example, with our federal government, whose sovereignty is derived from the Constitution adopted by the states which clearly declares that it has only those powers expressly granted to it by the states.[3] In our state government, the legislature as the representative of the people of the sovereign state, has inherently all of the sovereign powers of government, except as otherwise specified or prohibited by the state Constitution;[4] and this is of necessity particularly so with respect to its power to provide for the method of operation and control of the state government.

Reverting to consider the problem herein presented in the light of the above stated principles: reference to any standard dictionary will show that the term "to audit" means to ascertain the correctness of accounts; and the term "auditor" used in reference to accounts or accounting is defined as referring to the verifying and checking the accuracy of accounts; in regard to an officer of government it is one "whose duty it is to examine the acts of officers who have received and disbursed public moneys."[5] And in none of such definitions is there to be found any reference therein to the issuance or the drawing of warrants.[6] It is therefore submitted that the constitutional provision quoted above does not say anything, nor can it be fairly or reasonably construed to mean anything, concerning the issuance of warrants or having anything to do with prior control over the expenditures of state moneys.

If history is looked at to import some supposedly implied or unexpressed meaning, and thus distort the plainly expressed constitutional language for the purpose of bringing about a seeming conflict with the statute in question, a look at the history itself will defeat that purpose. Duties of the character herein claimed for the state auditor have always been regarded and treated as statutory. Such duties as the auditor has had beyond being the "Auditor of Public Accounts," that is, ascertaining the correctness of public accounts, were expressly provided for under the territorial statutes,[7] and were similarly so provided by

3. Amend. IX and X, U.S. Constitution.

4. Wood v. Budge, 13 Utah 2d 359, 374 P.2d 516; see also Yelle v. Bishop, 55 Wash. 2d 286, 347 P.2d 1081 (1959).

5. Ballentine, Law Dictionary.

6. See Law Dictionaries of Anderson, Ballentine, Black, Bouvier.

7. Compiled Laws of Utah, 1876, Title IV, Ch. 1, Sec. 49 (p. 91); Compiled Laws of Utah, 1888, Sec. 11, p. 251.

statute after statehood [8] and until 1943, when it was changed by an enactment of the legislature; [9] and that is the manner in which such a change should be made.

This change came about in our state through the general reorganization of our state government by the 1941 Legislature.[10] This included the creation of a department of finance.[11] Its purpose was stated:

> . . . to assist the governor in the execution of his constitutional duties as the state's chief executive officer *and which shall perform such duties and functions as may be prescribed by law.* In construing the authorities and duties imposed by this act, it is the intent of the legislature to define budgetary functions relating to the approval and allocation of funds, budgetary control of funds, prescribing personnel qualifications and salary schedules, approval of proposed expenditures for the purchase of supplies and services; and prescribing other budgetary functions under the constitutional authority of the state's chief executive

to transact all executive business for the state, as differentiated from the examination of claims as may be exercised by the board of examiners.[12]

In implementation of the purpose of handling state financial matters the department of finance was in 1943 given the authority and charged with the duty of drawing warrants upon the state treasurer to pay the state's financial obligations.[13] That aspect of the fiscal affairs of the state has been carried out in that manner since that time.

In prior decisions of this court dealing with the prerogatives and duties of departments of state government there are clear and unequivocal declarations that the constitutional duties of the state auditor are simply to determine the correctness of accounts. These cases are cited and reviewed in the comparatively recent cases of Toronto v. Clyde [14] and Bateman v. Board of Examiners.[15] In the latter case it was contended that the provision of Sec. 13 of Art. VII of the Constitution which

---

8. Laws of Utah, 1899, Ch. 69, Sec. 16. This section, which was codified as part

   of Sec. 87-4-1, U.C.A.1943, was deleted in the amendment to that section, Laws of Utah, 1943, Ch. 96, Sec. 1, passed on March 11, 1943, concurrent with which the law was passed which provided that the warrants would be in the control of the department of finance; see footnote 10, infra.

9. Laws of Utah, 1943, Ch. 14, Sec. 2, codified as Sec. 64-4-4, U.C.A.1953.

10. Laws of Utah, 1941, Ch. 10, First Special Session, codified as Ch. 2 of Title 63, U.C.A.1953.

11. Laws of Utah, First Special Session, 1941, Ch. 10, codified as Ch. 2 of Title 63, U.C.A.1953.

12. Sec. 63-2-1, U.C.A.1953.

13. See footnote 9, supra.

14. 15 Utah 2d 403, 393 P.2d 795 (1964).

15. 7 Utah 2d 221, 322 P.2d 381 (1958).

authorized the board of examiners to "examine all claims against the State" was limited to the ascertainment of the correctness of such claims. The decision pointed out that such ascertainment of the accuracy of claims was merely "an auditing function" which belonged to the state auditor; and that inasmuch as it was reasonable to assume that the authorization to the examiners should have some purpose, it was something more than "the mere auditing function" of the state auditor and that therefore the examiners have the prerogative of passing upon the validity of claims. In that connection this court said:

> One of the major difficulties with [the Board of] Education's contention that, except as to unliquidated claims against the state, [the Board of] Examiners has no discretionary authority and can perform *only an auditing function,* is that *that would be but a duplication of the duties of the state auditor* who is charged with the responsibility of auditing the records and accounts of all departments of state government. The question as to the extent of the power of Examiners has been dealt with by this court in numerous decisions. They clearly demonstrate that *Examiners has powers beyond mere auditing.*[16]

The discussion in that case, and in the prior decided cases cited therein, of the nature of the authority of the board of examiners to "examine all claims against the State," as being something more than "only an auditing function" and thus "a duplication of the duties of the State Auditor," i. e., the ascertainment of the correctness of accounts, constitutes clear declarations by this court as to what the auditor's duties are insofar as the constitutional provision is concerned. That concept of his duties, so declared by this court numerous times over a period of years, and never challenged until now, should have application here, and should not be departed from for the purpose of striking down a legislative enactment.

Our neighboring state of New Mexico has confronted a practically identical problem in its state government. It is my opinion that its Supreme Court dealt with the matter wisely and in accordance with sound principles of law in such a manner as to give effect to changes essential to the efficient and practical operation of their state government; and that we would be well advised to take guidance therefrom. In Torres v. Grant,[17] the legislature had created a department of finance and administration and authorized it to draw warrants upon the state treasurer. The treasurer refused to honor such a warrant, contending that the statute had divested the state auditor of prerogatives of his office

16. 7 Utah 2d at 228, 322 P.2d at 385.

17. 63 N.M. 106, 314 P.2d 712 (1957).

drawing such warrants. The New Mexico Supreme Court rejected the contention, saying:

> Of course the legislature cannot abolish a constitutional office nor deprive the office of a single prescribed constitutional duty. Nor can this be done by indirection, such as depriving him of all statutory duties, thereby leaving the office in name only, an empty shell . . .. But such is not the case here . . . we find the duties of the auditor substantially the same as previously performed by him.
>
> . . .
>
> \* \* \* \* \* \*
>
> If the framers of the constitution had not been mindful of the fact the legislature at some future time might wish to make changes such as are now before us, *this would have been a mighty good place to confine the issuance of warrants to the State Auditor by name.*[18]

It can be said with equal relevance here that if the framers had desired the state auditor to have duties beyond those of auditing, i. e., those now claimed for him, the drawing of warrants for the expenditure of funds, they could have so stated. Immaterial niceties aside, it is submitted that from a reading of the Torres case it will be seen that the New Mexico Supreme Court did not regard the authorization of the department of finance and administration to draw warrants as an encroachment upon the constitutional duties of the state auditor. The correctness of the reasoning of that court is inescapable and is directly applicable to our case if the words of our Constitution, "shall be Auditor of Public Accounts," are simply given their true meaning, that is, to ascertain the correctness of public accounts. This he can do at any and all times, either before, at the time of, or after vouchers are issued.

Another of our western neighbors, the state of Washington, has also confronted a very similar problem. In a case of Yelle v. Bishop [19] a challenge was asserted to the validity of "The Budget and Accounting Act" which established a new budget and accounting system for the state government. This was challenged as usurping some of what are called the preaudit duties of the state auditor the same as is done in our case. The court pointed out that those duties were statutory and that they could be changed by statute as enacted by the legislature.

> . . . we do not believe it reasonable to conclude they [the framers] intended any powers for the office of state auditor, except as they specifically provided by the express language of Art. III, § 20:
>
> " . . . The auditor *shall be auditor of public accounts,* and shall have such powers and perform such duties *in con-*

---

18. 314 P.2d at 713–714.

19. 55 Wash.2d 286, 347 P.2d 1081 (1959).

*nection therewith* as may be prescribed by law. . . ."

We believe the words *"in connection therewith"* relate directly to his duty as *auditor of public accounts* to be fixed by the lawmaking body; that his powers and duties as auditor, by this language, are within the exclusive discretion of the legislature, which may be fixed, enlarged, or diminished by that body at any time.[20] The Washington court went on to observe that its state Constitution

is not silent as to the powers and duties of the office of auditor and the *common-law duties or implied powers cannot attach to the office, but only those as may be prescribed by law.*[21]

The only cases which we have found, or which have been called to our attention, which repudiate such a statute, are those in which the office of the state auditor as set up by the Constitution have been in effect *destroyed or rendered useless.* An example is the case of Thompson v. Legislative Audit Commission.[22] The challenged statute provided for a transfer from the state auditor to the defendant Legislative Audit Commission all of the records and equipment of the state auditor, and further provided that after a future date, January 1, 1967, the salary of the state auditor should be reduced to one dollar per year. It was held that this was in effect an attempt to abolish the office of state auditor and its constitutional prerogatives, but specifically mentioning that these consist of postaudit duties.[23]

It certainly cannot be said that the statute here challenged abolishes the office of state auditor or reduces it to a futility. He is left with the free and unrestrained authority to perform the only duties expressly given him by the Constitution, to be "the Auditor of Public Accounts" in the very same manner that his office has been doing for the past 28 years. It is submitted that that responsibility can be fully and efficiently discharged without in any way involving or requiring that the auditor himself have the duty of drawing warrants on the state treasurer, and there is neither constitutional nor statutory requirement that he do so. It is, however, necessary that he shall have a record of all of the warrants drawn by the department of finance, and this is expressly provided by Section 67–3–1(8), U.C.A.1953.

There can be no doubt about the desirability of the auditor being completely independent in the performance of his duties of keeping track of state finances. This view and that purpose of the auditor is also reflected in the case of Thompson v. Legis-

20. 55 Wash.2d at 295, 347 P.2d at 1086.

21. 55 Wash.2d at 297, 347 P.2d at 1087.

22. 79 N.M. 693, 448 P.2d 799 (1968).

23. The case of Hudson v. Kelly, 76 Ariz. 255, 263 P.2d 362 (1953), is similar. See also State ex rel. Grant v. Eaton, 114 Mont. 199, 133 P.2d 588 (Mont.1943).

lative Audit Commission, supra,[24] wherein the court described the function of the state auditor:

> [T]he office of state auditor was created and exists for the basic purpose of *having a completely independent representative of the people,* accountable to no one else, with the power, duty and authority to examine and *pass upon the activities of state officers* and agencies who, by law, receive and expend public moneys.

Under the majority holding this advantage of a completely independent audit of the activities of all state officers will be impaired because a substantial part of the auditor's duties will be the checking upon the functioning of his own office. It seems wholly reasonable and practical for the efficient operation of state government that the auditor should audit public accounts, as the Constitution states. On the other hand, it seems quite inconsistent with the desirable objective of safeguarding and checking on such handling of public funds to have the same officer (the auditor) possess the authority to make determinations concerning the expenditures of funds, then draw the warrants in accordance therewith, and then perform the duty as "Auditor" by checking upon the propriety and accuracy of his own actions.

The case of Allen v. Rampton[25] is suggested as controlling here. If we look to the essential of that case and what was actually decided, it will be seen as significantly different from this one and not inconsistent with the position taken in this dissent: that the constitutional officer (the treasurer) must be given the full authority as expressly stated by the Constitution. Section 17 hereinabove quoted, says that he "shall be the custodian of public moneys." It is inherent in the very nature of money that it bears interest. Being a proper custodian involves both its safekeeping and managing the interest factor with care and prudence. The legislature had created an investment council which was given powers over the control of public moneys which interfered with the treasurer's duty and prerogative of the safekeeping and prudent handling of such funds. It was very properly held that this intruded upon his constitutional duties. It is true that reference was made to his duties as carried on prior to statehood, but they in fact were no different than as prescribed by the ordinary meaning of the words in the Constitution. We certainly should not be in a position of judicially circumscribing the duties of all state officers as being confined strictly in conformity with those performed prior to statehood. The framers had no such intention as is shown by said Section 17 which goes on to state, "and each shall perform such other duties as may be provided by law." That no such rigidity

---

24. Footnote 22 above.

25. 23 Utah 2d 336, 463 P.2d 7.

was intended, but that the legislature should have a comparatively high degree of freedom to revise the structure of state government as necessity may arise is further plainly indicated in the last sentence of Section 1, Article VII, dealing with executive officers: "they shall perform such duties as are prescribed by this Constitution and as may be prescribed by law."

A final important consideration bearing on this problem is that our legislature has met biennially and in a number of special sessions since 1943 with the law as established by the challenged statute and the department of finance acting as an arm of the board of examiners in the disbursement of state funds in accordance with the terms of the appropriate acts of each session without any challenge made or any substantial change in such arrangement. I can see no valid reason why this arrangement as created by the legislature 28 years ago should not continue indefinitely, or until changed by the people of this State through their representatives in the legislature.

For the reasons stated herein, it is my opinion that the striking down of the statute in question is an unjustified intrusion into the legislative prerogative, and I would therefore reject the attack made upon it. (All emphasis added.)

TUCKETT, J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.