525 P.2d 335

**Marjorie Ruth MOON, as State Treasurer, Plaintiff-Appellant,**

v.

**The INVESTMENT BOARD of the State of Idaho et al., Defendants-Respondents.**

**No. 11417.**

Supreme Court of Idaho.

July 31, 1974.

---

4. Idaho 264, 486 P.2d 275 (1971).

Wayne P. Fuller, Brauner, Fuller & Doolittle, Caldwell, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., Boise, for defendants-respondents.

BAKES, Justice.

Appellant Marjorie Ruth Moon, treasurer of the State of Idaho, brought an action for declaratory judgment in the district court against the Investment Board of the State of Idaho, the Department of Finance, the Commissioner of Finance and the State of Idaho, seeking to have I.C. § 57–724 and § 57–725 declared unconstitutional as applied to the Public School Endowment Fund. Appellant also sought to have the court declare that the provisions of Chapter 7, title 57, Idaho Code, which specify the Investment Board's creation and its investment functions, conflict with the constitutional duties of the state treasurer and are therefore void. Respondent filed a motion for summary judgment which was heard upon a written stipulation of facts. The district court granted the summary judgment holding that the statutes in question are constitutional. From that action, appellant brings this appeal.

Appellant's assignments of error raise two principal questions. First, does I.C. § 57–724 conflict with Article 9, section 3, of the Idaho Constitution in that: (a) the statute specifies that only losses re-

alized from investments made by the board under section 9 (this excludes losses on investments purchased prior to March 25, 1969) shall be made up by a general fund appropriation of the legislature; and (b) the statute uses "marketable value" for computation of losses incurred after the effective date of the act. Secondly, does the act infringe upon the constitutional duties of the state treasurer by transferring the authority to invest the school endowment fund to the investment board. We answer both questions in the negative and affirm the judgment of the trial court.

Regarding the procedure for making up losses, I.C. § 57–724 provides as follows:

"57–724. *Distribution of income from investments—Determination of net capital gains or losses.*—The board shall distribute the income from the investments or securities in accordance with this act. For the purposes of this act, income shall not include capital gains derived from the sale of investments or securities. In computing the percentage of net capital gains or net capital losses the board shall use the marketable value of the securities as of the effective date hereof for its computation on July 1, 1971, and shall thereafter use the marketable value of the securities as of June 30 of the preceding two (2) year settlement date. All net capital losses realized from investments made under section 57–722 shall be made up from an appropriation from the general fund on a biennial basis, and shall be credited to the appropriate fund. All net income or net losses from the investments or securities shall be distributed to each participating fund in the same rates as each fund's average daily balance bears to the total average daily balance of all participating funds, provided, losses of the public school fund shall be maintained separate from all other funds as required by section 3 of article 9 of the Idaho constitution."

Appellant first contends that this provision conflicts with Article 9, section 3, of the Idaho Constitution by failing to provide for losses which occurred prior to 1969. In effect, appellant argues that the legislature cannot take any action to make up losses unless it includes *all* losses which have occurred since the adoption of the constitutional provision in 1890. The trial court held that while the statute was not all-encompassing, i. e., did not provide for losses occurring prior to 1969, that fact alone did not render § 57–724 unconstitutional. We find this reasoning of the trial court to be persuasive and correct. Article 9, section 3, of the Idaho Constitution provides:

"§ 3. *Public school fund to remain intact.*—The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. *The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses* thereof that may in any manner occur." (Emphasis added).

In enacting I.C. § 57–724, the legislature established a procedure for determining and supplying losses occurring after 1969. It did not sanction losses occurring prior to that time, nor did it preclude an appropriation to supply such losses. That the statute is not all-encompassing does not bring it within a constitutional limitation and render it unconstitutional.[1]

1. *See also* State v. Pontier, 95 Idaho 707, 518 P.2d 969 (1974); Idaho Telephone Co. v. Baird, 91 Idaho 425, 423 P.2d 337 (1967), concerning the strong presumption in favor of the constitutionality of a statute.

Neither does the enactment of the statute relieve the legislature of its constitutional obligation to supply all losses, if any, occurring prior to 1969.

■ Secondly, appellant contends that the use of "marketable value" as a basis for determining losses, rather than actual acquisition cost, violates Article 9, section 3, in that "marketable value" fails to provide for "all losses." As an example, appellant contends that a security acquired prior to March 25, 1969, at $1,000 and which had a market value of $800 on March 25, 1969, and then is later sold for $900 would be reported by the Investment Board to the legislature as a $100 gain rather than a $100 loss. However, turning the same example around, a security purchased in 1965 for $800 and having a market value of $1000 on March 25, 1969, and subsequently sold for $900, would result in a reported loss of $100 under the act, rather than a $100 gain. What these examples demonstrate is that different methods of accounting can result in placing the loss or gain in different accounting periods, i. e., either pre-or post-March 25, 1969. However, as we have previously discussed, the fact that the legislature has by the questioned legislation only commenced making up losses occurring subsequent to March 25, 1969, does not render the act unconstitutional, nor relieve the legislature of its obligation to make up losses occurring prior to that time. The use of the phrase "all losses" in Article 9, section 3, of the Constitution, is not self-defining and of necessity requires definition. Any accounting method, whether cost or accrual, which will accurately reflect the losses and gains in the fund on a consistent basis over the years would be in substantial compliance with the constitutional mandate. Nothing in the evidence before this Court indicates that the accounting method set out in the act will not accurately reflect losses and gains in the fund for the post-March 25, 1969, period. Merely because any losses accruing prior to that time are not covered by the act does not render it defective as

previously discussed. Implementation of constitutional principles is an appropriate function of legislation, and unless such implementing legislation is clearly in violation of the constitutional principle, it is a valid exercise of the legislative power. Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105 (1938), wherein this Court stated:

> "There is no exclusionary language or implication in article 9, § 4, which deprives the Legislature of the power to cover into the public school fund other monies than those which, under that section, must be paid into it; and the manner in which losses therein must be supplied by the state, required by article 9, § 3, *is left without limitation, other than constitutional, to the discretion of the Legislature.*" 58 Idaho at 722, 78 P.2d at 118. (Emphasis added).

We are of the opinion that the questioned legislation is a proper application of legislative discretion.

■ Appellant's next argument is that the act infringes upon the constitutional duties of the state treasurer by allocating the investment of the school endowment fund to the Investment Board. However, an analysis of Article 9, section 3, and the history of the Idaho Constitutional Convention supports the trial court's holding that there is no conflict between the requirements of Article 9, section 3, and the creation of the Investment Board.

Article 9, section 3, provides in part that ". . . [t]he state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed." The following excerpt from the proceedings and debates of the Idaho Constitutional Convention (1889), Vol. I, at p. 647, is instructive in ascertaining the intent of the Constitutional Convention in drafting Article 9, section 3.

> "Mr. McCONNELL. Mr. Chairman, I think no fund is more sacred than the school fund, and perhaps there is no other fund so sacred; it should be guarded

in every manner possible, and by having this provision in here, the children will always be made sure there will be that much money to their credit, and we will have that much at stake in our schools. But if there is no provision for making this fund good in every way, it may be squandered, and the first thing we know our school fund will be so small that we can only maintain the schools by local taxation. I think the legislature can provide for making good any losses which may occur. They will probably be more careful in making investments if it is known that the state has to make it good."

■ Such language indicates that the Constitutional Convention intended that the legislative branch of the government should have control over the investment of the school endowment fund. As an incentive to making sound investments, the convention provided that the legislature would have to make good all losses. This does not conflict with the provision that the state treasurer should be the custodian of the fund, but bifurcates the responsibilities between the executive and legislative branches of government. The treasurer is the custodian of the fund[2] and the legislature directs by law how the fund shall be invested, which, in this case, was accomplished by the creation of an investment board. Appellant relies heavily upon the case of Preece v. Rampton, 27 Utah 2d 56, 492 P.2d 1355 (1972), in support of her position that the creation of the investment board conflicts with the constitutional duties of the state treasurer. *Preece* involved an interpretation of the following section of the Utah State Constitution:

"The Auditor shall be Auditor of Public Accounts, and the Treasurer shall be the custodian of public moneys, and each shall perform such other duties as may be provided by law." 492 P.2d at 1356.

The constitutional provision in *Preece* is readily distinguishable from Article 9, section 3, of the Idaho Constitution involved in this case and as such, *Preece* does not aid in the resolution of this case. Likewise, appellant's reliance upon Wright v. Callahan, 61 Idaho 167, 99 P.2d 961 (1940), is misplaced. *Wright* involved a case wherein the legislature attempted to establish a separate state office which clearly usurped the duties of the state auditor. In this case, the legislature is effectuating their constitutional mandate to direct by law the manner in which the fund shall be profitably invested. This conclusion is buttressed by the enactment of Article 9, section 11 of the Idaho Constitution, amended first in 1945 and again in 1968, which reads as follows:

"§ 11. Loaning permanent endowment funds.—The permanent endowment funds other than funds arising from the disposition of university lands belonging to the state, shall be loaned on United States, state, county, city, village or school district bonds or state warrants or on such other investments as may be permitted by law under such regulations as the legislature may provide."

Article 9, section 11, as amended, further indicates the constitutional mandate that the legislature is responsible for the investment of the permanent endowment funds.

The judgment of the district court is affirmed. Costs to respondent.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.

2. *See* 72 Am.Jur.2d, States, § 64, at p. 461 (1974).